Filed 7/9/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AUGUSTINE CALDERA, | |
| Plaintiff and Appellant, | G053168 |
| v. | (Super. Ct. No. CIVDS1000177) |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment and an order of the Superior Court of San Bernardino County, Bryan F. Foster, Judge. Affirmed in part and reversed in part.

Scolinos, Sheldon & Nevell and Todd F. Nevell; Pine, Pine, Freeman, Tillett and Norman Pine for Plaintiff and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Chris A. Knudsen, Assistant Attorney General, Celine M. Cooper, Melissa F. Day and Vanessa W. Mott, Assistant Attorneys General for Defendants and Appellants.

\* \* \*

Under the Fair Employment and Housing Act (FEHA), an employee with a disability can sue his or her employer and supervisors for disability harassment. (Gov. Code, § 12940, subd. (j)(1).) The employee must prove the harassment was either severe or pervasive. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 466.)

Augustine Caldera is a correctional officer at a state prison. Officer Caldera stutters when he speaks. The prison's employees mocked or mimicked Caldera's stutter at least a dozen times over a period of about two years. Sergeant James Grove, a supervisor, participated in the mocking and mimicking of Caldera's stutter. Such conduct reflected the prison's culture, according to a senior prison official.

Caldera sued the California Department of Corrections and Rehabilitation (CDCR) and Grove (collectively defendants) for disability harassment, failure to prevent the harassment, and related claims. A jury found the harassment to be both severe and pervasive and awarded Caldera $500,000 in noneconomic damages. The trial court found the damage award to be excessive and granted defendants' motion for a new trial solely as to that issue. Defendants appeal and Caldera cross-appeals.

Defendants claim there is insufficient evidence the harassment was either severe or pervasive. We disagree. There is substantial evidence to support the jury's factual findings. Defendants also claim the trial court committed two instructional and one evidentiary error. We find no prejudicial instructional errors and the claimed evidentiary error has been forfeited.

Caldera claims the trial court failed to file a timely statement of reasons after granting defendants' motion for a new trial. We agree. The court's new trial order as to the damage award is reversed. In all other respects, the judgment is affirmed.

2

# I

## FACTS AND PROCEDURAL BACKGROUND

In July 1994, Caldera began working as correctional officer in Imperial County. About a year later he transferred to the California State Institute for Men in Chino. At the time of trial Caldera was still employed as a correctional officer and had been working at the state prison in Chino for 20 years. Caldera stutters when he speaks.

Starting in 2006, Caldera began working as a mental health escort officer within the administrative segregation unit (Ad Seg) of the prison. The Ad Seg unit is an area where inmates with disciplinary issues or mental health needs are housed. The Ad Seg unit consists of two to three "halls," or housing facilities. Caldera's primary duties were to transport inmates to and from their mental health appointments.

Between 2006 and 2008, Sergeant Grove and Officer Caldera largely worked in two different halls within the Ad Seg unit. At some point, Grove began mocking or mimicking Caldera's stutter. Caldera did not document what occurred; Caldera never imagined he would have to testify in court. Grove always mimicked Caldera's stutter when other employees were present. According to Caldera, "Whatever [words] I stuttered on, Grove would sit back and repeat what I stuttered." Caldera felt that Grove's conduct "was demeaning. It was embarrassing, . . . definitely harmful." Caldera also described the conduct as "really hurtful." A psychologist testified at trial that Caldera had experienced psychological disorders as a result of the mimicking of his stutter. When asked to estimate how many times Grove had mocked or mimicked his stutter, Caldera said, "More than 5, less than 15."

On one particular occasion (date unknown), Grove mimicked Caldera's stutter over the prison's radio system. After Caldera had broadcasted an announcement, Grove got on the radio and mimicked what Caldera had said. The transmission could be heard by about 50 employees. Officer Robert Konrad was on duty with Caldera at the time; Konrad saw that Caldera's "facial expression was in shock, saddened." Konrad

3

later discussed the incident with Caldera. Konrad "said, that's kind of f***ed up, on the radio, like that. [Caldera] said, yeah, I get it all the time . . . ."

In 2008, Dr. Victor Jordan worked as a psychologist supervisor in the Ad Seg unit. Dr. Jordan had worked closely with Caldera and regarded him as an "outstanding" correctional officer. At the time of trial in 2015, Dr. Jordan had been working at the Chino prison for over 23 years and had been promoted to chief psychologist and chief of mental health. Dr. Jordan described Caldera's disability as a: "Speech impairment, stuttering, specifically, stammering." Dr. Jordan testified that he personally heard prison employees mock or mimic Caldera's stutter on many occasions. When asked to "estimate over the years" how many times he had witnessed this, he replied, "I'm sure a dozen times that I've paid attention to." He agreed that there was "a culture of joking" at the prison about Caldera's stutter. Dr. Jordan said that Caldera's reactions varied; at times Caldera laughed, at times Caldera reacted by "firing back," and at times Caldera appeared embarrassed by the conduct.

On September 2, 2008, Sergeant Grove, Officer Caldera, and Dr. Jordan were all present in a main corridor of the prison during a busy shift change, which occurred at about 2:00 p.m. At that time, there were about 24 correctional officers in the general area. Caldera said something to Grove and he responded by saying, "'F-f-f-f**k you.'" Caldera threatened to file a formal complaint. Grove then responded by saying, "I don't give a F-f-f. Make sure you get my name right." Later that day, Caldera went to the prison's Equal Employment Opportunity (EEO) office and obtained a form to file a complaint. Sergeant Grove went to his supervisor and self-reported the encounter.

On September 9, 2008, Caldera filed an EEO complaint against Grove. Two days later, Caldera learned that Grove was to be reassigned to the same Ad Seg hall where he had been working (although they had separate chains of command). Caldera went to several superiors, including the warden, to express his concerns about Grove's upcoming reassignment. One of the superiors said that Caldera was "almost to the point

4

of tears when he spoke about" the shift change incident and that Caldera "felt really degraded" by what Grove had said to him in front of his fellow correctional officers.

Several days later, the prison reassigned Grove to the same Ad Seg hall where Caldera had been working. Caldera learned from others that Grove was continuing to mock and mimic his stutter. Caldera felt that Grove treated him differently than the other correctional officers.

On October 3, 2008, there was a training class for the prison's supervisors. Sergeant Jessie Lara was in attendance, as was Grove. Before the class, Lara had heard about the shift change incident involving Grove and Caldera. At some point during the class, Grove was again mimicking Caldera's "speech impediment and basically saying he didn't give a f**k about him. Saying it with the speech, I don't give a f**k." Lara said that Grove mimicked Caldera's stutter "throughout the whole conversation."

*Court Proceedings*

Caldera filed a complaint in the superior court alleging various causes of action against defendants including disability harassment, failure to prevent harassment, and retaliation. The trial court granted defendants' summary judgment motion, which this court reversed in an unpublished opinion. This court held that as to each cause of action there were triable issues of material fact. (*Caldera v. CDCR et al.* (Feb. 25, 2014, G048943 [nonpub. opn.].)

The matter then went to trial. The jury returned the following special verdicts: Caldera was subjected to unwanted harassing conduct based on his disability; the harassment was severe; the harassment was pervasive;[1] a reasonable person in Caldera's position would have considered the work environment to be hostile or abusive;

---

[1] The jury must find the prohibited harassment to be either severe or pervasive. (*Miller v. Department of Corrections*, *supra*, 36 Cal.4th at p. 466.) The verdict forms directed the jury to answer each question separately. The jury answered, "Yes" to both questions.

a supervisor participated in, assisted, or encouraged the harassing conduct; the harassing conduct was a substantial factor in causing harm; the CDCR had failed to take all reasonable steps to prevent the harassment; and the CDCR's failure to prevent the harassment was a substantial factor in causing Caldera harm. The jury did not find true Caldera's claim that he had been subjected to adverse employment actions (retaliation).

The jury determined that Caldera was entitled to $500,000 in noneconomic damages. The new trial motion will be covered in the discussion section of this opinion.

II

DISCUSSION

Defendants contend there was insufficient evidence to support the jury's factual findings and the trial court committed two instructional and one evidentiary error. Caldera contends the trial court's order granting defendants' motion for new trial should be reversed. We shall address each of the parties' contentions in turn.

A. *Defendants' Sufficiency of the Evidence Claims*

The trial court instructed the jury: "Harassing conduct may include: verbal harassment, such as obscene language, demeaning comments, slurs, threats, or mocking and mimic of [Caldera's] stutter." (CACI No. 2523.) Defendants do not argue there is insufficient evidence of "harassing conduct." Rather, defendants argue there is insufficient evidence the harassing conduct was either severe or pervasive. The CDCR further argues there is insufficient evidence that it failed to take all reasonable steps to prevent the harassment. We disagree.

The standard of review is well settled. Our review "*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) Substantial evidence is reasonable,

6

credible, of solid value, and of ponderable legal significance. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633.)

A judgment will be upheld if it is supported by substantial evidence, even if contrary evidence exists and the jury might have rendered a different result had it believed this evidence. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) In this review we cannot "'reweigh the evidence or reassess the credibility of witnesses.'" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.)

### 1. Severe or Pervasive Harassment

Under the FEHA, it is an unlawful "[f]or an employer . . . or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition[, etc.,] . . . to harass an employee . . . ." (Gov. Code, § 12940, subd. (j)(1).) "[L]iability for harassment is broader than liability for discrimination. [L]iability for harassment, which extends to 'any person' and hence extends to 'individuals,' encompasses individual supervisory employees." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 65.)

"The law prohibiting harassment is violated '[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"' [Citations.]" (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 263-264.) The determination "is ordinarily one of fact." (*Ibid*.) All harassment claims require severe *or* pervasive conduct. (See, e.g., *Ramirez v. Wong* (2010) 188 Cal.App.4th 1480, 1488.) The words "severe" and "pervasive" have no peculiar meanings under the law. The adjective "severe" is defined as "strongly critical

7

and condemnatory" or "inflicting pain or distress." (Webster's Collegiate Dictionary (11th ed. 2007) p. 1140, col. 2.) The verb "pervade" is defined as "to become diffused throughout every part of." (*Id*. at p. 925, col. 2.)

As to whether the alleged conduct is sufficiently severe or pervasive, a jury is to consider the totality of circumstances. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609-610.) "In determining whether the conduct was severe or pervasive, you should consider all of the circumstances. You may consider *any or all* of the following: [¶] (a) The nature of the conduct; [¶] (b) How often, and over what period of time, the conduct occurred; [¶] (c) The circumstances under which the conduct occurred; [¶] (d) Whether the conduct was physically threatening or humiliating; [¶] (e) The extent to which the conduct unreasonably interfered with an employee's work performance." (CACI No. 2524, italics added.)

Incidents of harassing conduct over a short period of time may constitute severe or pervasive harassment. (*Fuentes v. AutoZone, Inc*. (2011) 200 Cal.App.4th 1221, 1224 (*Fuentes*).) In *Fuentes*, the plaintiff worked as a part-time cashier for just over three weeks. During that time, two store managers spread rumors that the plaintiff had a sexually transmitted disease and had a sexual relationship with another employee. The managers also suggested that the plaintiff could make more money as a stripper or a bikini model. (*Id*. at pp. 1224-1225.) On one occasion, a manager "physically moved [the plaintiff] to turn her around and display her buttocks to customers, while he was laughing and clapping. . . . Later the same day, when two of the regular customers who had witnessed the first turning incident returned to the store, [the manager] told [the plaintiff] to be ready to turn around again for them. [The plaintiff] refused. [The manager] also told [the plaintiff] that if he and she owned the store, they could be rich because all she had to do 'was just turn around and show them [her] butt.'" (*Ibid*.)

In *Fuentes*, the jury found in favor of the plaintiff's claim of sexual harassment. (*Fuentes*, *supra*, 200 Cal.App.4th at p. 1224.) Defendants appealed,

8

claiming insufficiency of the evidence. The Court of Appeal disagreed. (*Ibid*.) The court noted that the defendants' challenge "treats each incident or comment in isolation. It ignores the requirement that we consider the totality of circumstances." (*Id*. at p. 1227.) After considering the defendants' arguments, the court found: "All of these issues are factual matters for resolution by the trier of fact." (*Id*. at p. 1233.) The court held that while the alleged incidents "occurred over a compressed period of time, approximately three weeks . . . , we find substantial evidence that the harassment suffered by [the plaintiff] was both pervasive and severe." (*Id*. at p. 1234.) In affirming the jury's verdict, the court noted that: "The evidence established that [the plaintiff] found the conduct of [the store managers] offensive. We conclude that a reasonable person would share that perception." (*Id*. at p. 1237.)

Here, similar to *Fuentes*, the evidence established that Caldera found the harassing conduct to be offensive. Although in this case the conduct involved disability harassment rather than sexual harassment, we also conclude that a reasonable person in Caldera's position would be similarly offended.

As far as the harassing conduct being severe, Caldera described the conduct he was subjected to as: demeaning, embarrassing, harmful, and hurtful. Caldera testified that every time Grove mocked or mimicked his stutter, he did so in front of others. Grove's harassing conduct over the prison's radio system was heard by about 50 employees and appears to have been particularly egregious. The shift change incident occurred in front of about 24 employees. The training incident occurred in front of an unknown number of supervisors. Dr. Jordan testified that the harassing conduct was at times done in a mean spirited and harmful manner. A psychologist testified that the harassment caused Caldera to experience psychological disorders. Based on the totality of circumstances, a jury could reasonably find that the harassing conduct was "severe."

As far as the harassing conduct being pervasive, Dr. Jordan said that he witnessed the harassing conduct on at least 12 occasions. Caldera estimated that Grove

9

had mocked or mimicked his stutter anywhere from five to 15 times. Although neither Dr. Jordan nor Caldera provided exact dates as to when each incident occurred, their testimony reasonably indicates that the harassing conduct roughly took place over a two-year time frame from 2006 to 2008. This is certainly longer than the three-week period the court found to be sufficient in *Fuentes*.

Dr. Jordan further testified the harassing conduct was so pervasive that he regarded it as part of the culture at the prison. Dr. Jordan's testimony was also bolstered by the testimony of Sergeant Lara, who witnessed the harassing conduct during the training class. It seems striking to us that the harassment was so pervasive within the institution that Grove apparently felt he could openly mimic Caldera's stutter in front of his peers (a group of prison supervisors) without any sense of shame or fear of reprisal. It appears plain to us there was sufficient evidence upon which the jury could reasonably determine that the harassing conduct was "pervasive."

In sum, there was sufficient evidence—the testimony of several witnesses—to support the jury's factual determination that the harassing conduct in Caldera's workplace was both severe *and* pervasive (again, the jury only needed to find the harassing conduct to be either severe *or* pervasive).

Defendants argue that Caldera "was [n]ever subjected to severe harassment." Defendants generally cite four published opinions for the proposition that "for harassing conduct to be severe, the employee must have been subjected to extreme behavior such as an assault, or threat of an assault, or improper physical contact." (*Brennan v. Townsend & O'Leary Enterprises, Inc.* (2011) 199 Cal.App.4th 1336, 1351, 1353 (*Brennan*); *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039 (*Hughes*); *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 (*Lyle*); *Etter v. Veriflo Corp.* (1998) 67 Cal.App.4th 457, 462-466 (*Etter*).) Primarily relying on these four opinions, defendants argue that the harassment Caldera was subjected to was merely "inappropriate" and "does not constitute severe harassment as a matter of law." We

10

disagree. *Hughes*, *Brennan*, and *Lyle* are distinguishable based on their facts. And, regrettably, defendants misrepresent the appellate court's holding in *Etter*.

In *Hughes*, *supra*, 46 Cal.4th at page 1040, a defendant (trustee) made several sexually suggestive comments during a telephone conversation with a plaintiff, who was the mother of the trust's beneficiary (a minor). Later that night, at a museum reception, defendant told plaintiff, "'I'll get you on your knees eventually. I'm going to f**k you one way or another.'" (*Ibid.*) The Supreme Court found that the conduct was not so severe or pervasive as to constitute sexual harassment; the court held that although "an isolated incident of harassing conduct may qualify as 'severe' when it consists of 'a *physical* assault or the threat thereof', . . . defendant's remark, which was made in the presence of other people attending a private showing at a museum, would not plausibly be construed by a reasonable trier of fact as a threat to commit a sexual assault on plaintiff. [Citation.]" (*Id*. at p. 1049.)

Here, unlike *Hughes*, Caldera was not subjected to an isolated incident of harassing conduct. Again, according to Dr. Jordan, he personally heard Caldera's stutter being mimicked or mocked on at least 12 occasions. Further, as its chief psychologist, Dr. Jordan characterized the harassing conduct as representing the "culture" of the prison. Caldera also presented evidence of three specific incidents of harassing conduct by Grove and further testified that there had been anywhere from five to 15 incidents involving Grove. Because the harassing conduct occurred on more than one isolated occasion, Caldera was not additionally required to show that the harassing conduct consisted of physical assaults or threats of physical assaults under the holding of *Hughes*.

In *Brennan*, the plaintiff was an assistant media planner at an advertising agency. (*Brennan*, *supra*, 199 Cal.App.4th at p. 1340.) The plaintiff sued the agency for various claims, including sexual harassment. (*Id*. at pp. 1344-1345.) The plaintiff had "witnessed only three incidents of gender-based conduct involving [other female] coworkers [not the plaintiff] over the span of several years." (*Id*. at p. 1355, italics

11

omitted.) The plaintiff had also inadvertently received one offensive e-mail, which referred to her as "'big-titted'" and "'mindless.'" (*Id*. at p. 1342.) The jury returned a special verdict, "finding plaintiff was subjected to severe or pervasive harassment." (*Id*. at p. 1345.) A majority of the appellate panel disagreed. "Neither the . . . e-mail nor any evidence at trial showed plaintiff was . . . ever . . . subjected to explicit language *directed at her or at anyone else in her presence*. [Citations.] Plaintiff was also never subjected to '*verbal abuse or harassment*.' [Citation.]" (*Id*. at p. 1353, italics added.)

In *Lyle*, the plaintiff was a writers' assistant who sued the writers and producers of the Friends television show for hostile work environment (sexual harassment). (*Lyle*, *supra*, 38 Cal.4th at p. 275.) Although the plaintiff testified that no one in the workplace ever said anything sexually offensive about her, the plaintiff generally complained that a number of sexually offensive acts occurred. (*Ibid*.) The Supreme Court concluded that the conduct did not amount to a hostile environment because the "instances of sexual antics and sexual discussions . . . did not involve and *were not aimed at plaintiff or any other female employee*." (*Id*. at p. 287, italics added.) The court found that "discussions of personal sexual experiences and preferences . . . while brainstorming and generating script ideas for this particular show was neither surprising nor unreasonable from a creative standpoint." (*Ibid*.)

Here, unlike the conduct in *Brennan* and *Lyle*, the harassing conduct in this case was verbally directed and specifically aimed at Caldera (rather than people with speech impediments in general, although that would certainly be similarly offensive). Further, Caldera personally witnessed the harassing conduct directed at him on at least five occasions. And, according to Caldera, Grove always mocked and mimicked his speech impediment in the presence of other employees. Thus, the evidence of severe or pervasive harassment directed specifically against Caldera in this case is distinguishable from the evidence that was found to be insufficient in *Brennan* and *Lyle*.

12

In *Etter*, a plaintiff sued a store for racial harassment. (*Etter*, *supra*, 67 Cal.App.4th at pp. 460-461.) During a six-week period in which the plaintiff worked as a temporary storeroom clerk, a coworker allegedly "called him 'boy' almost daily; . . . called him 'Buckwheat' between five and ten times; . . . called him 'Jemima' twice on one day, . . . called him 'Stymie' (another character on The Little Rascals) once or twice. Plaintiff also testified that [the coworker] asked him why some Black people pronounce the wor[d] 'ask' as 'axe' and then ridiculed the pronunciation of other Black workers." (*Ibid.*) At trial, a jury found in favor of the defendant (store). The "sole issue" raised by the plaintiff (clerk) on appeal concerned an alleged instructional error. (*Id.* at pp. 459-460.) The Court of Appeal concluded that the challenged "instruction was not erroneous, and we affirm the judgment in favor of defendant." (*Id.* at p. 460.) The court noted "that our approval of the jury instruction is in no way an approval of the hurtful and demeaning remarks allegedly made here." (*Id.* at p. 467.)

Defendants briefly discuss the facts from *Etter* in their opening brief and claim: "The court found no actionable harassment existed." Wrong. The *court* made no such finding; the *Etter* opinion solely addressed the alleged instructional error. The *jury* apparently found that the plaintiff had not proven his harassment claim. But that factual finding by the jury in *Etter*—based on its unique alleged facts and evidence—has no bearing on whether there is substantial evidence in this record to sustain the jury's factual determination. In this case, we find that such evidence exists.

Also, within the statement of facts in their opening brief, defendants focus exclusively on the radio, shift change, and training class incidents in which Grove mocked or mimicked Caldera's stutter. Defendants assert that: "These three minor incidents were the only ones that [Caldera] presented evidence about." Again, defendants are wrong. For instance, defendants completely fail to mention the testimony of Dr. Jordan, who was called to testify on Caldera's behalf and was a particularly compelling witness. We need not repeat Dr. Jordan's testimony about the number of

times he had observed prison employees engaging in harassing conduct, as well as his testimony concerning the culture of harassing conduct at the prison. [2]

Finally, defendants argue that the harassing conduct was not legally actionable because they characterize the conduct as "minor incidents of simple teasing and offhand remarks." (Original boldfacing and capitalization omitted.) But these are plainly issues for the trier of fact. Here, the jury determined that the harassing conduct was both severe and persuasive. There is sufficient evidence to support those findings. We cannot and will not second guess the jury's judgment.


### 2. *Failure to Prevent Harassment*

An employer is obligated "to take all reasonable steps necessary to prevent . . . harassment from occurring." (Gov. Code, § 12940, subd. (k).) "When a plaintiff seeks to recover damages based on a claim of failure to prevent . . . harassment . . . she must show three essential elements: 1) plaintiff was subjected to . . . harassment . . . ; 2) defendant failed to take *all reasonable steps* to prevent . . . harassment . . .; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." (*Lelaind v. City and County of San Francisco* (N.D. Cal. 2008) 576 F.Supp.2d 1079, 1103, italics added.)

There can be no liability for an employers' failure to prevent harassment claim unless actionable harassment occurred. (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1410.) Relying on this logical construct, defendants argue there is insufficient evidence to support the "failure to prevent claim because [Caldera] was never

---

[2] Caldera argues defendants forfeited their insufficiency of the evidence claim on appeal because of the "incomplete and highly misleading discussion of the facts." (Original boldfacing and capitalization omitted.) We agree that defendants' statement of facts is incomplete and misleading, but we have decided to address the insufficiency claims nonetheless. We respectfully remind defendants' counsel (the Attorney General) that he has a duty to fairly summarize all the facts in the light most favorable to the judgment; otherwise, he risks forfeiting future sufficiency of evidence claims on appeal. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

14

subjected to harassing disability related conduct severe or pervasive enough that it created a hostile work environment." Because we have found sufficient evidence to support the jury's finding that the defendants' harassing conduct was both severe and pervasive, the premise of defendants' argument is wholly undercut.

Defendants' further argue that the "CDCR has . . . anti-harassment . . . policies and provides annual training on those policies." Defendants point to evidence that purportedly shows that Caldera filed a formal EEO complaint on September 9, 2008, and the CDCR took corrective action in the form of a cease and desist letter to Grove "on that same date." But the record also shows that Grove continued to mimic Caldera's stutter at the training class attended by the prison's supervisors, which occurred about four weeks later, on October 3, 2008. Based on the totality of the circumstances, the jury could have reasonably determined that regardless of whatever steps the CDCR had taken to prevent harassment, those steps were not effective; thus, the jury could reasonably find that the CDCR had failed "to take all reasonable steps" to prevent the harassment. (See Gov. Code, § 12940, subd. (k).)

B. *Defendants' Instructional Error Claims*

Defendants claim that the trial court committed instructional error by instructing the jury using Caldera's special jury instruction No. 7, and by failing to instruct the jury using defendants' special jury instruction No. 17. We disagree.

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him [or her] which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomplete. (*Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 209.) A court also may refuse an instruction when the legal point is adequately covered by other instructions. (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1189, fn. 11.)

15

On appeal, we review the propriety of the jury instructions de novo. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82.) In considering the accuracy or completeness of a jury instruction, we evaluate it in the context of all of the court's instructions. (*Ibid.*) We will not reverse the judgment for instructional error unless the error results in a miscarriage of justice, i.e., "'where it seems probable' that the error 'prejudicially affected the verdict.'" (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 580.)

### 1. Special Instruction No. 7

After the close of evidence, Caldera requested additional jury instructions, including special instruction No. 7, which read: "An employer's failure to follow its own policies and procedures is not illegal in and of itself, but may be evidence of pretext." When the trial court was discussing the proposed instruction with the attorneys, *defendants' counsel* said, "I think it's a correct statement of the law. I'm not sure I like it." The court then said it would give the instruction.

We agree with defendants' trial counsel; special instruction No. 7 correctly states the law. (See *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 239 ["A defendant's failure to follow its own policies or procedures may also provide evidence of pretext"].) Defendants now contend on appeal that the instruction was erroneous, incomplete, and misleading. We need not address the apparent forfeiture issue. Even if we were to assume instructional error, we find that it is not reasonably probable that the error would have prejudicially affected the outcome.

Here, the trial court instructed the jury that in order to find defendants violated the FEHA's proscription against harassment, Caldera needed to prove all of the elements of the claim. One of those elements was: "The harassing conduct was severe or pervasive." We presume the jury understood and followed that instruction. Special instruction No. 7 simply told the jurors that: "An employer's failure to follow its own

16

policies and procedures is not illegal in and of itself, but may be evidence of pretext." The special instruction did not invite the jurors to disregard the other instructions. The special instruction did not lower Caldera's burden of proof. Indeed, the instruction arguably worked to defendants' advantage because it specifically told the jury that the CDCR's failure to follow its own policies and procedures did *not* constitute illegality.

In sum, even if we assume the trial court committed error by giving special instruction No. 7, we are highly confident the error had no prejudicial effect.

### 2. *Special Instruction No. 17*

Defendants requested special instruction No. 17: "The law does not exhibit 'zero tolerance' for offensive words or conduct. Rather, the law requires the plaintiff to meet a threshold standard of severity or pervasiveness." Caldera's counsel opposed the instruction, stating: "This is duplicative." The trial court responded: "Yeah, it's contained with the—you can argue that; but it is argument, not a Special Instruction."

We agree. Defendants' requested special instruction No. 17 was both duplicative and argumentative. The court's instructions already told the jury that in order to find harassment, Caldera needed to prove all of the required elements, including: "That the harassing conduct was severe or pervasive." If the court would have further instructed the jury that "[t]he law requires the plaintiff to meet a threshold standard of severity or pervasiveness[,]" the court would have been restating the same concept. Further, the phrase: "The law does not exhibit 'zero tolerance' for offensive words or conduct[,]" is perhaps a logical argument, but it is not a statement of law. Defendants were free to make that argument to the jury.

In conclusion, we find no prejudicial instructional errors.

17

## C. Defendants' Evidentiary Error Claim

Appellate briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number . . . ." (Cal. Rules of Court, rule 8.204(a)(1)(C).) "It is neither practical nor appropriate for us to comb the record on [a party's] behalf." (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 888.) When a party fails to support a point with record citations, the point may be forfeited. (*Id*. at p. 887.) Further, each point must be stated "under a separate heading or subheading summarizing the point," and with support "by argument and, if possible, by citation of authority" on the point. (Cal. Rules of Court, rule 8.204(a)(1)(B).)

Here, defendants state in their opening brief that "the trial court erred in admitting into evidence . . . CDCR's Disciplinary Matrix and EEO policies and procedures. Admitting the evidence prejudiced [defendants] and mislead [sic] the jury by creating the incorrect presumption that it violated FEHA if the jury determined that it did not follow its own policies and procedures." The quoted sentences represent the entire extent of defendants' argument. Defendants do not cite the record or any legal authority. There is no separate heading. For these reasons, defendants have forfeited their evidentiary error claim on appeal.


## D. Caldera's Cross-Claim Concerning Defendants' New Trial Motion

The trial court granted defendants' motion for new trial on the sole ground of excessive damages and it did so within the statutory time frame of 60 days. (§ 660.) Thus, the order is not "void." However, the trial court did not file a statement of reasons within 10 days, which is required by statute. (§ 657.) Thus, the order is "defective." Defendants concede that the order granting a new trial is "defective," but they argue that the new trial order can be affirmed on other grounds. We disagree and reverse the order.

On October 26, 2015, Caldera filed and served Notice of Entry of Judgment, attaching a copy of the Judgment on Special Verdict, which had been filed 10

18

days earlier by the trial court.  This action started a 60-day time limit for "the power of the court to rule" on any motions for new trial.  (§ 660.)

On November 10, 2015, defendants filed a motion for a new trial.  The grounds raised in the motion were insufficient evidence, irregularities in the proceedings, and excessive damages.

On December 14, 2015, the trial court held a hearing.  The court denied the motion for new trial on all grounds raised, with the exception of excessive damages.  The court orally stated that, "I'm going to grant the Motion for New Trial unless the plaintiff is willing to accept the remittitur down to $100,000."  That same day, the court also entered its order in the minutes.  The minute order noted that the motion for new trial had been granted and the grounds were "limited to damages."  However, the court's minute order does not include a statement of reasons.

"When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated."  (§ 657.)  "If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk."  (§ 657.)  This 10-day period acts as a sort of statute of limitations.  (*Mercer v. Perez* (1968) 68 Cal.2d 104, 121.)  If the court files a statement of reasons beyond the 10-day period, the statement is then "an act in excess of jurisdiction and is therefore a nullity."  (*La Manna v. Stewart* (1975) 13 Cal.3d 413, 418.)  The order granting the new trial must then ordinarily be reversed.  (*Id*. at p. 429.)

On February 11, 2016, the trial court filed a "Statement of Reasons," while recognizing its statement was being filed well past the 10-day limit.  Defendants concede the statement was untimely and therefore the order granting a new trial was defective.  However, defendants argue that the new trial motion can be affirmed on other grounds.

19

"If an order granting a new trial does not effectively state the ground or the reasons, the order has been reversed on appeal where there are no grounds stated in the motion other than insufficient evidence or excessive or inadequate damages. [Citations.] If, however, the motion states any *other* ground for a new trial, an order granting the motion will be affirmed if any such other ground legally requires a new trial. [Citations.]" (*Sanchez–Corea v. Bank of America* (1985) 38 Cal.3d 892, 905.)

Here, in their motion for new trial, in addition to grounds of insufficiency of the evidence and excessive damages, defendants raised an additional ground (irregularities in the proceedings). Therefore, this court must affirm the trial court's grant of the new trial motion on alternative grounds if a new trial is legally required. (See *Sanchez–Corea v. Bank of America*, *supra*, 38 Cal.3d at p. 905.) However, it is defendants' burden "to advance any grounds stated in the motion upon which the order should be affirmed, and a record and argument to support it." (*Id*. at p. 906.)

The sole alternative ground argued by defendants in this appeal is that "a new trial is warranted because the trial court erred in giving an irrelevant and misleading jury instruction, [s]pecial [i]nstruction [No.] 7, that prejudiced CDCR." But we have already determined that even if the trial court erred by giving special instruction No. 7, it would not have affected the outcome; that is, we have already found that the alleged instructional error was not prejudicial.

We cannot affirm the trial court's defective order granting defendants' motion for a new trial motion on alternative grounds because a new trial is not legally required. Thus, we must reverse the trial court's order, which granted defendants' a new trial confined to the issue of damages.

20

III

DISPOSITION

The order granting defendants' new trial motion is reversed. In all other respects, the judgment is affirmed. Caldera is awarded costs on appeal.


                                        MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.