Filed 11/2/20  Zimmerman v. Fierstadt & Mans CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MICHAEL ZIMMERMAN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>FIERSTADT & MANS, LLP, et al.,<br><br>    Defendants and Respondents. | B298216<br><br>(Los Angeles County<br>Super. Ct. No. BC629535) |
| FIERSTADT & MANS, LLP,<br><br>    Cross-Complainant and<br>    Appellant,<br><br>    v.<br><br>MICHAEL ZIMMERMAN, et al.,<br><br>    Cross-defendants and<br>    Respondents, | |

APPEAL from an order of the Superior Court of
Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Ross Law and Robert S. Ross for Plaintiffs, Cross-defendants, Appellants and Respondents Michael and Donna Zimmerman.

Cole Pedroza, Joshua C. Traver and Scott M. Klausner for Defendant, Cross-complainant, Appellant and Respondent Fierstadt & Mans, LLP.

Nemecek & Cole, Frank W. Nemecek and Mark Schaeffer for Defendants and Respondents Fierstadt & Mans, LLP, Jack A. Fierstadt and David A. Mans.

_____

Michael and Donna Zimmerman sued their former lawyers, Fierstadt & Mans, LLP (F&M), Jack A. Fierstadt, and David A. Mans (collectively, the Fierstadt defendants) for legal malpractice. F&M cross-complained against the Zimmermans for breach of contract. A jury returned a special verdict denying any recovery for each side and the court entered judgment accordingly. The Zimmermans appealed and F&M filed a cross-appeal.

The Zimmermans contend that the court erred in denying their request that the jury be given four special instructions and in its answer to a question from the jury. They further argue that the jury's verdicts are inconsistent and require a new trial.

F&M argues that, if we reverse the judgment based on inconsistent verdicts, we should remand for a new trial on both the Zimmermans' complaint and F&M's cross-complaint.

We reject the Zimmermans' contentions and affirm. F&M's cross-appeal is therefore moot.

2

**FACTUAL SUMMARY AND PROCEDURAL HISTORY**

### A. The Burnett Action

Thirty-seven residential properties along Woodlyn Lane (the road) in Bradbury are within a common interest development and subject to certain covenants, conditions, and restrictions (CC&Rs).

The document setting forth the original CC&Rs, drafted in 1950, established a 30-foot-wide easement for the road (the easement). The western portion of the easement is defined by metes and bounds; the eastern portion is described as "continuing" from a particular point "in a Southeasterly and Easterly direction and following the course of the presently travelled road." The description is expressly "subject to the actual existing course of the roadway on the ground as of June 15, 1950 and all deviation therefrom then in use."

By the time the disputes underlying this case arose, the exact location of the road as it was traveled in 1950 was unknown; indeed, there was evidence that its location had been altered by the Zimmermans' predecessor and the City of Los Angeles. The road's current configuration, however, has been in place since it was paved in 1957. The Zimmermans purchased their property in 1988.

The CC&Rs also established the Woodlyn Lane Improvement Association (the association), comprised of the owners of the lots adjacent to the road. The CC&Rs give the association the right to alter or remove existing improvements in the road, including "fences" and "gates," and the right "to purchase, construct, improve, repair, maintain the [road] and any and all improvements, fixtures and equipment installed thereon." The CC&Rs are enforceable by the association and any lot owner.

The prevailing party in any action to enforce the CC&Rs is entitled to recover reasonable attorney fees and costs.

During the relevant time periods, access to the road was restricted by gates at its west and east ends. The gate at the west end is motorized and controlled by remote controls issued to Woodlyn Lane residents. The east gate is not motorized; it is locked by a padlock that must be manually disengaged to open the gate. All Woodlyn Lane residents have a key to the padlock. The road is 37 feet wide where it meets the east gate.

At the east end of the road, the Zimmermans own the property on the south side of the road and Yosuf and Gale Maiwandi own the property on the north side. The east gate is located partially on the Zimmermans' property and partially on the Maiwandis' property.

Donald and Joan Burnett are members of the association who own lots near the west end of the road. In December 2008, they sued the Zimmermans and the Maiwandis seeking, among other relief, a declaration of the association's rights with respect to the east gate (the Burnett action). According to the Burnetts, the association owns the easement and has exclusive authority with respect to the road and the east gate; the Zimmermans and Maiwandis asserted that the easement was unenforceable and that they owned the east gate. The Burnetts also asserted various tort causes of action.

In August 2011, the Zimmermans retained F&M to represent them in the Burnett action.

Trial on the Burnetts' claims was trifurcated. First, the court would determine whether the Burnetts had standing to sue on behalf of the association. If the Burnetts had standing, the court would, in the second phase, determine the merits of the

4

Burnetts' equitable and declaratory relief causes of action. Third, if necessary, the Burnetts' tort claims would be tried to a jury.

After a trial in the first phase, the court determined that the Burnetts had standing to pursue their claims.

During the Fall of 2014, the Zimmermans were facing financial difficulties and had fallen behind in paying F&M's invoices. Fierstadt and Donna Zimmerman agreed that the Zimmermans would give F&M a promissory note for $150,000 secured by a deed of trust on certain vacation property. According to Donna Zimmerman, Fierstadt agreed that the note would "cover everything."[1] The Zimmermans executed the deed of trust on October 11, 2014.

The second phase trial took place in October and November 2014. The Zimmermans, through F&M, asserted: (1) the easement was invalid because its imprecise description rendered it unlocatable; (2) the Burnetts could not establish an easement based upon prescription and other theories; (3) if there once was an easement, the association had abandoned it; and (4) the Zimmermans had extinguished any easement by adverse possession.

On September 1, 2015, the court issued a statement of decision on the second phase trial, determining that the Burnetts were entitled to the declaratory relief they sought against the Zimmermans. The court rejected the Zimmermans' contention

---

[1] F&M disputed whether they had agreed that the $150,000 amount was a limit on their billings and pointed to an email from Fierstadt to Donna Zimmerman on October 3, 2014, regarding the note and deed of trust, and stating, "It should [be] understood that the amount due will be subject to actual invoices presented."

5

that the easement was invalid because it could not be located precisely. The court explained that, even if the current road differed from the road traveled in 1950, "all the residents of Woodlyn Lane, including the [Zimmermans], have impliedly consented to, and acquiesced in, the substitution of the current road for the 'travelled road' of 1950 for purposes of the express easement in the CC&Rs." The court also rejected the Zimmermans' easement abandonment and adverse possession theories.

After the court's ruling on the second phase, the Burnetts dismissed their remaining tort claims.

On October 28, 2016, the court entered an amended judgment declaring that "[t]he Association built, owns and has the legal right of dominion and control" over the east gate. The judgment also awards the Burnetts $1,242,217.05, as attorney fees and costs, against the Zimmermans.

## B. The Zimmermans' Malpractice Action and F&M's Cross-complaint

In August 2016, the Zimmermans sued the Fierstadt defendants for legal malpractice.[2] The Zimmermans asserted that the Fierstadt defendants were negligent by, among other

---

[2] After the Zimmermans filed a notice of appeal from the judgment in the Burnett action, the Zimmermans and the Burnetts entered into an agreement pursuant to which the Zimmermans agreed to dismiss the appeal and turn over to the Burnetts any proceeds, net of their expenses, realized from the malpractice lawsuit against the Fierstadt defendants; the Burnetts agreed to forbear from collecting on the amended judgment until the occurrence of an event specified in the agreement.

things, failing to adequately research the applicable law and asserting invalid and frivolous defenses to the Burnett action. In particular, (1) the Fierstadt defendants asserted that the Burnetts did not have standing to pursue their lawsuit despite a provision in the CC&Rs and the law, and (2) the easement was enforceable and there were no legal or factual grounds for challenging it. According to the Zimmermans, the validity of the easement was clear under California law based in part on statements in a particular treatise: Miller & Starr, California Real Estate (Miller & Starr).

F&M cross-complained for breach of contract to recover $351,169.92 in unpaid fees.

In January 2019, the case was tried to a jury. The Zimmermans contended that the Fierstadt defendants failed to adequately research the applicable law and advise the Zimmermans of alternatives available to them, including settlement. The Fierstadt defendants asserted that they complied with their duties of care to the Zimmermans and that, given the personalities of the litigants and the nature and complexity of the issues, the case could not have settled.

Regarding the standard of care the Fierstadt defendants owed to the Zimmermans, the Zimmermans relied in part on the testimony of James Jones, the Burnetts' attorney in the Burnett action. Jones testified that a lawyer must educate himself or herself regarding the applicable law immediately upon undertaking a matter for a client. He explained how an attorney could research the applicable law regarding the easement issues by consulting Miller & Starr.

The Fierstadt defendants introduced the testimony of an expert who stated, generally, that the applicable "standard of

7

care is the care and skill that a reasonable practitioner would bring to a case." More particularly, the expert opined that it is "a good idea to be able to explain to the client the various options that are available," and that the Fierstadt defendants met that standard in representing the Zimmermans. The expert further testified that "lawyers have a duty to educate themselves on the law applicable to the case," and that the Fierstadt defendants did so in this case.

On January 31, 2019, the jury returned a special verdict. On the Zimmermans' malpractice cause of action, the jury found the Fierstadt defendants were not negligent. On F&M's breach of contract cause of action, the jury found that F&M had performed its contractual obligations, but was not entitled to recover because one or more conditions to the Zimmermans' duty to pay did not occur. Based on these verdicts, the court entered a judgment denying recovery to each side.

In April 2019, the Zimmermans filed motions for a new trial and for judgment notwithstanding the verdict, and F&M filed a motion for judgment notwithstanding the verdict on its cross-complaint. On May 2, 2019, the court denied each of these motions. F&M served notice of the ruling on May 8, 2019.

The Zimmermans timely appealed and F&M timely cross-appealed.

## DISCUSSION

### A. *The Zimmermans' Special Jury Instructions*

The Zimmermans requested, and the court refused, the following four special jury instructions.

Special Instruction No. 1: "An attorney must educate himself about the laws, statutes, and legal propositions that are applicable to the claims and defenses in a lawsuit."

Special Instruction No. 2: "An attorney may only present claims, defenses, or legal contentions that are warranted by existing law or warranted by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

Special Instruction No. 3: "An attorney must only present allegations or factual contentions that have evidentiary support or that are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

Special Instruction No. 4: "An attorney accepting a new case must inform the client of alternative courses of action and of the potential negative consequences of each course of action at the earliest possible time."

Instead, the court instructed the jury with CACI Nos. 600, 602, and 603.

CACI No. 600, as given, states: "An attorney is negligent if he fails to use the skill and care that a reasonably careful attorney would have used in similar circumstances. This level of skill, knowledge, and care is sometimes referred to as 'the standard of care.' [¶] You must determine the level of skill and care that a reasonably careful attorney would use in similar circumstances based only on the testimony of the expert witnesses, including Jack A. Fierstadt, David A. Mans, Brandon

9

Carroll, Kevin Brogan, and James Jones, who have testified in this case."

CACI No. 602, as given, states: "An attorney is not necessarily negligent just because his efforts are unsuccessful or he makes an error that was reasonable under the circumstances. An attorney is negligent only if he was not as skillful, knowledgeable, or careful as another reasonable attorney would have been in similar circumstances."

CACI No. 603, as given, states: "An attorney is not necessarily negligent just because he chooses one legal strategy, makes a decision or makes a recommendation and it turns out that another strategy, decision or recommendation would have been a better choice."

The Zimmermans contend that the court prejudicially erred in denying the request for their special jury instructions. We disagree.

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) But a court may refuse a proposed instruction that is adequately covered by or duplicative of other approved instructions (*City of Los Angeles v. Retlaw Enterprises, Inc.* (1976) 16 Cal.3d 473, 490; *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 44 (*Caldera*)), or is "erroneous, misleading, or otherwise improper." (*Orichian v. BMW of North America, LLC* (2014) 226 Cal.App.4th 1322, 1333.)

10

We review the propriety of the jury instructions de novo. (*Caldera*, *supra*, 25 Cal.App.5th at pp. 44–45.) "In considering the accuracy or completeness of a jury instruction, we evaluate it in the context of all of the court's instructions." (*Id*. at p. 45.) If the court erred in refusing to give a proper instruction, we will reverse only " 'where it seems probable' that the error 'prejudicially affected the verdict.' " (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 580.)

We agree with the Fierstadt defendants that the CACI instructions the court gave adequately instructed the jury as to the law of legal malpractice and that the Zimmermans' proposed special instructions were unnecessary and might have misled the jury. In particular, the substance of each proposed instruction is encompassed within the scope of CACI No. 600, which sets forth the applicable standard of care: Attorneys must "use the skill and care that a reasonably careful attorney would have used in similar circumstances." The Zimmermans' proposed instructions were an attempt to focus the jury's attention on the particular aspects of the Fierstadt defendants' conduct that the Zimmermans sought to emphasize in considering that standard of care: attorneys must educate themselves about the applicable law (special instruction No. 1); attorneys must present only defenses and contentions that have legal and evidentiary support (special instructions Nos. 2 and 3); and attorneys must inform their clients of potential negative consequences of alternative courses of action (special instruction No. 4). It is, however, "error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition." (*Fibreboard Paper*

11

*Products Corp. v. East Bay Union of Machinists* (1964)
227 Cal.App.2d 675, 718; see *City of Los Angeles v. Retlaw*
*Enterprises, Inc.*, *supra*, 16 Cal.3d at p. 490 [court properly
refused to give instruction that "would have essentially
duplicated other instructions which the court did give to the
jury"].)  Even if the court erred in failing to give the proposed
instructions, the Zimmermans have failed to establish the
requisite probability that the error prejudicially affected the
verdict.  (See *Soule v. General Motors Corp.*, *supra*, 8 Cal.4th
at p. 580.)

### B. Court's Response to Jury Question About Miller & Starr

The Zimmermans contend that the court erroneously
responded to a question from the jury based upon misleading
information from counsel for the Fierstadt defendants.  We reject
the argument.

During trial, the Zimmermans' counsel questioned Jones
(Burnetts' lawyer in the Burnett action).  Counsel asked Jones
about the following point Jones asserted in a brief in the Burnett
action after the second phase trial:  " 'Once an easement is
established, it is common for the parties to change [the] location
by mutual consent, and such consent may be implied from the
acts and acquiescence of the parties.' "  The brief was admitted
into evidence in the malpractice case as exhibit 416.  Counsel
pointed out that Jones supported this assertion with citations to

12

two cases and a quote from Miller & Starr, which Jones noted "is a well-known real estate treatise on California law."[3]

The Zimmermans' counsel then asked Jones about the role of Miller & Starr in legal research at his law firm and how an attorney can find the quote he used from Miller & Starr in exhibit 416:

"[Question:] In teaching those young lawyers, you have them start with books like Miller & Starr; right?

"[Answer:] That is one way into the law, yes. You get a treatise that is well respected and then you find citations there and you look them up.

"[Question:] Miller & Starr; right?

"[Answer:] It is a multi, multi-volume set . . . .

"[Question:] Miller & Starr is actually a law firm in Northern California; right?

"[Answer:] Yes, it is.

"[Question:] Real estate law firm?

"[Answer:] Yes.

"[Question:] Well-known one; right?

"[Answer:] They have been cited quite often by the appellate court.

"[¶] . . . [¶]

_____

[3] The excerpt from Miller & Starr, as quoted in exhibit 416, is the following: " 'Change of location by agreement. The parties may agree to change the location of an easement, and on an agreement, the same rights and duties that attached to the original location apply to the easement at its new location. [Citations.] . . . If the location is changed without an express agreement, and there is no objection to the relocation, it may be implied that the parties agreed to the change by their acquiescence.' " (Boldface and fn. omitted.)

"[Question:]  [The Miller & Starr volumes] have tables of contents?

"[Answer:]  They do.

"[Question:]  [Y]ou can look up in the table of contents about the creation of easements or the change of location of an easement?

"[Answer:]  Yes.

"[Question:]  You can flip from the table of contents to the portion of the book and find a summary of the law; right?

"[Answer:]  Yes.

"[Question:]  . . . You can read it and it will say something like what you wrote here in your brief?

"[Answer:]  That's correct.

"[Question:]  It will say, 'the parties may agree to change the location of an easement.  And on agreement, the same rights and duties that attach to the original location apply to the easement in its new location.'  [¶]  Right?

"[Answer:]  Yes.

"[Question:]  'If the location has changed without an express easement, there is no objection to the relocation of the implied, the parties agree to the change by acquiescence.'

"[Answer:]  Yes."

Brandon Carroll, an attorney with F&M who worked on the Burnett action, testified that he had access to Miller & Starr during the relevant time period.  When asked whether he had looked at "what Miller & Starr said about the grant of unlocated easement being enforceable," Carroll testified that he "probably came across it at some point," but did not have a specific recollection of doing so.  Nor did he recall ever informing Fierstadt or Mans of Miller & Starr's statements on the issue.

14

The Zimmermans' counsel did not question Fierstadt or Mans as to whether they consulted Miller & Starr in conducting any research in the case.

In closing argument in the malpractice case, the Zimmermans' counsel pointed to F&M's apparent failure to consult the Miller & Starr treatise as evidence of its negligence. Counsel argued that F&M had access to Miller & Starr and "could have opened it up, looked at the table of contents on the section on easements and flipped to the section that deals with creation and movement of an easement. Would have taken about 15 minutes maybe." He further argued that it was not until January 2015, three months after the second phase trial, that F&M found an important case that was detrimental to the Zimmermans' position and which was "right in Miller & Starr." Counsel repeated the point in his rebuttal argument.

During deliberations, the jury requested "[c]larification of Miller & Star[r] use as evidence or argument [*sic*]." The court and counsel discussed the request. When a question was raised about Jones's trial testimony regarding Miller & Starr, the court asked counsel if a transcript was available. Counsel for F&M read a portion of Jones's trial testimony concerning the use of Miller & Starr as a starting point for research and the frequency with which it is cited by Courts of Appeal, but stopped reading before reaching the part where Jones testifies as to how one can use the table of contents in the treatise to get to the substantive points he used in his brief for the Burnetts. Nevertheless, F&M's counsel told the court: "There's no other references [to Miller & Starr] that I see."

The Zimmermans' counsel recalled that "there's more," and that he had examined witnesses "with regard to that excerpt

15

straight out of Miller & Starr.  That is quoted out of Miller & Starr."  Counsel did not, however, offer to locate or read any additional testimony.

After further discussion, the court proposed to respond to the jury's question as follows:  "You have asked whether Miller & Starr is in evidence.  It is not.  An expert may be examined or cross-examined relating to various statements in Miller & Starr and the testimony is in evidence, but that does not make the statements themselves evidence."

The Zimmermans' counsel expressed concern that the jurors would interpret the court's proposed response as instructing them:  "[D]on't consider Miller & Starr."  He requested that the response specify that "the book Miller & Starr is not in evidence," but that testimony about Miller & Starr and documents containing excerpts from Miller & Starr are in evidence.  The court rejected this proposal and ultimately responded to the jury's question as it had proposed.

On appeal, the Zimmermans argue that F&M's counsel's omissions in her readback to the court of testimony concerning Miller & Starr was misleading.  As the Fierstadt defendants assert, however, the Zimmermans' counsel could have corrected that omission at the time but failed to do so.  Indeed, the Zimmermans' counsel recalled that "there's more," and that "multiple witnesses" were examined regarding exhibit 416, where Miller & Starr was quoted.  The Zimmermans' counsel, however, did not request that additional portions be read.

Even if the attorney's readback of testimony was misleading by omission, the omission does not appear to have had any effect on the court's formulation of its response to the jury's question.  The court acknowledged that the Zimmermans'

counsel had examined Jones with respect to exhibit 416 and the substantive statements within Miller & Starr.  The omission in the readback, therefore, was not prejudicial.

The Zimmermans next contend that the court's response was substantively erroneous because once exhibit 416 and Jones's testimony regarding the Miller & Starr statements were admitted into evidence, the statements in the treatise were "admitted as evidence for the jury to use for any purpose."  We disagree.  Statements admitted into evidence may not necessarily be considered by the jury for all purposes.  For example, an out of court statement that is inadmissible hearsay if offered to prove the truth of the matter stated may nevertheless be admitted into evidence and considered by the jury for a non-hearsay purpose.  (1 Witkin, Cal. Evidence (5th ed. 2012) Hearsay, § 5, pp. 788–789.)  The admission of such a statement cannot then be used "for any purpose," as the Zimmermans assert, because it cannot be used to prove the matter stated.

That is the situation here.  The Miller & Starr statements are out of court statements by the authors of the treatise and may not be introduced to prove the truth of the matter stated in the quoted material.  Indeed, because the determination of legal issues is within the exclusive province of the court, the jury could not consider the subject statements in Miller & Starr for the purpose of determining that the law is as Miller & Starr asserts it to be.  (4 Mallen, Legal Malpractice (2020) § 37:101, p. 1807 ["[i]ssues of law do not become issues of fact for the jury in a legal malpractice action"].)  They could be used, however, as they were used here:  to show that such statements are within Miller & Starr and could have been discovered by attorneys conducting research in accordance with their standard of care.

17

In this light, the trial court's response to the jurors is not erroneous.  Although the court did not precisely quote the hearsay rule in responding to the lay jurors, its instruction that testimony relating to statements in Miller & Starr is in evidence, but Miller & Starr itself and statements within that treatise are not in evidence effectively communicated how the jurors could properly consider the evidence:  As proof that competent attorneys would have discovered the statements within Miller & Starr, but not as proof that Miller & Starr's statements are true or that they correctly state the law.

The fact that F&M did not object to the introduction of exhibit 416 or Jones's testimony regarding the Miller & Starr statements does not alter our conclusion.  Because the evidence was admissible for a non-hearsay purpose, any objection would have been overruled.  Although F&M could have requested an admonition that the jury not use Miller & Starr's statements as evidence of the truth of the statements, there was no reason for such an admonition:  It is apparent from the context in which the Miller & Starr statements were discussed during trial that they were offered solely to show that reasonable attorneys would have consulted the "well respected" treatise, used the treatise's "table of contents" to "flip" to the chapter on easements, and located the particular statements within Miller & Starr that would have alerted them to a legal issue and the need for further investigation.  This purpose is also emphasized in the Zimmermans' closing argument, in which counsel argued that F&M attorneys had access to Miller & Starr and could have found the pertinent law within "about 15 minutes."  Because the Zimmermans used the statements in this way—not to prove the

truth of the statements—any hearsay admonition was unnecessary.

Even if the court's response to the jury's question was erroneous, the Zimmermans have failed to establish that the error was prejudicial. They assert that "the Miller & Starr evidence was [their] best and strongest evidence to prove [the Fierstadt defendants'] negligence" and that, by telling the jurors that "Miller & Starr was not in evidence, the [c]ourt essentially told the jury that the Zimmermans best evidence was *not* evidence." (Capitalization omitted and italics added.) The assertion, however, is not borne out by the record. Indeed, as explained above, the Zimmermans relied little, if at all, on the statements within Miller & Starr for the truth of the statements; the Miller & Starr excerpts were referred to in testimony and argument primarily, if not exclusively, to show how lawyers conducting research in accord with their standard of care could find the statements—not to establish the truth of the statements.

The Zimmermans also assert that the instruction was prejudicial because they decided not to call a retained expert on an attorney's standard of care because they "had relied on the evidence entered through . . . Jones." The argument implies that they would have called their retained expert if they had known that the court was going to inform the jury that Miller & Starr's statements are not in evidence. They do not explain, however, what the expert could have said to fill the gap left by the court's instruction. To the extent the argument suggests that the expert would have opined on the truth of Miller & Starr's statements or similar legal propositions, the testimony would be excludable as impermissible expert opinion on the law. (See *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884 [" 'experts may not

19

give opinions on matters which are essentially within the province of the court to decide' "]; 4 Mallen, *supra*, § 37:132, p. 1905 ["In a legal malpractice action, expert testimony on issues of law should be precluded."].) The Zimmermans have therefore failed to establish that any error in the court's response to the jury's question was prejudicial.

## C.      Consistency of the Verdicts

The Zimmermans contend that the special verdicts are inconsistent and require a new trial. We reject the contention.

"Inconsistent verdicts are ' "against the law," ' and the proper remedy is a new trial." (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344.) "A special verdict is inconsistent if there is no possibility of reconciling its findings with each other." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357.) We review de novo whether special verdict findings are inconsistent. (*Id.* at p. 358.)

Question No. 1 of the special verdict, pertaining to the Zimmermans' malpractice claim, asked: "Were any of the defendants negligent?" The jury answered, "No," as to each defendant. Based on that answer, the jury did not answer any further questions regarding the Zimmermans' malpractice claim.

Regarding F&M's breach of contract claim, the jury, in responding to questions Nos. 7 and 8, found that F&M entered into a contract with the Zimmermans and that F&M did "all, or substantially all, of the significant things that the contract required it to do." Question No. 9 asked: "Did all of the conditions that were required for the performance of Michael Zimmerman and Donna Zimmerman under the contract occur?" The jury answered, "No." Based on that answer, the jury did not

20

answer any further questions regarding the breach of contract claim.

The Zimmermans contend that the jury's finding under question No. 1, that none of the defendants was negligent, is inconsistent with its finding on question No. 9, that one or more conditions to the Zimmermans' duty to perform—that is, to pay F&M's legal bills—did not occur. The Zimmermans assert that these answers are inconsistent because the only possible condition implied in question No. 9 is the condition that F&M competently performed its services. Because that condition did not occur, the Zimmermans argue, F&M was negligent. This implied negligence finding, they conclude, is inconsistent with the jury's finding under question No. 1 that F&M was not negligent.

The Zimmermans' argument is based on conjecture. F&M's professional competence is not the only possible condition to the Zimmermans' duty to pay F&M's legal bills. The jury may have reasonably concluded, as it did, that F&M had performed under its contract with the Zimmermans without being negligent, but that the Zimmermans had paid F&M all it was due. As the trial court explained, the jury may have accepted the Zimmermans' assertion "that the underlying case was a simple case and [F&M] should not have 'run its bills up.'" Thus, "the jury could have found for [the Zimmermans] on this issue and therefore answered question number 9 as they did despite their finding that [F&M] was not negligent in its representation." The jury may also have accepted Donna Zimmerman's testimony that F&M had agreed that the note and deed of trust the Zimmermans gave to F&M in October 2014 would "cover everything." Because it is possible to reconcile the jury's findings in these ways, they are not

21

necessarily inconsistent.  We therefore reject the Zimmermans' argument.

### D.    F&M's Cross-appeal

F&M argues that, if we conclude that the jury verdicts are inconsistent, then we must reverse the judgment as to its cross-complaint and direct the court to order a new trial.  Because we conclude that the jury verdicts are not inconsistent, F&M's appeal is moot.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.