Filed 6/21/23  Kreuz v. Fisher & Paykel Appliances CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| IVY KREUZ, | |
| Plaintiff and Appellant, | G061153 |
| v. | (Super. Ct. No. 30-2019-01102995) |
| FISHER & PAYKEL APPLIANCES, INC. et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Affirmed.

Odell Law, Robert Odell and Claudette H. Villicaña for Plaintiff and Appellant.

Rutan & Tucker and Brandon L. Sylvia for Defendants and Respondents.

Ivy Kreuz sued her former employer Fisher & Paykel Appliances, Inc. (F&P), F&P's Executive Administrator Barbara Kim, and F&P's Director of Human Resources Teryle Aguilar[1] for claims based on alleged violations of the California Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq.[2] Kreuz asserted claims for age discrimination, harassment based on age, failure to prevent discrimination and/or harassment, wrongful termination in violation of public policy, and unfair competition.

Two years after Kreuz filed her complaint, defendants moved for summary judgment or, alternatively, for summary adjudication. In challenging the age discrimination claim which was based on the termination of Kreuz's employment, defendants produced undisputed evidence, including Kreuz's deposition testimony, showing she had made several mistakes, including losing invoices, while performing the duties of her accounts payable position with F&P. The trial court concluded defendants carried their burden of producing evidence showing its decision was based on legitimate, nondiscriminatory reasons. After Kreuz did not produce any evidence showing F&P's reasons were fabricated or otherwise pretextual, the trial court concluded a reasonable trier of fact could not find in favor of Kreuz on her age discrimination claim.

In light of the dearth of evidence Kreuz was harassed based on her age, the trial court concluded no triable issue of material fact existed as to that claim either. As Kreuz's remaining claims were entirely dependent upon the viability of her age discrimination and harassment claims, the trial court found they failed as well and entered judgment in favor of defendants.

We affirm. We have independently reviewed the record, including the evidence proffered by the parties, and agree with the trial court that it is devoid of

---

[1] We refer to F&P, Kim, and Aguilar, collectively, as "defendants."

[2] All further statutory references are to the Government Code unless otherwise specified.

evidence of pretext or of incidents of harassment based on age.  Given the absence of a triable issue of material fact as to Kreuz's discrimination and harassment claims, and as to Kreuz's remaining claims accordingly, summary judgment was properly granted.

SUMMARY OF UNDISPUTED MATERIAL FACTS AND ADDITIONAL EVIDENCE PRODUCED BY KREUZ IN OPPOSITION TO THE MOTION

I.

CONCERNS ABOUT KREUZ'S PERFORMANCE AS F&P'S RECEPTIONIST

In 1993, Kreuz began working for Dynamic Cooking Systems.  In 2007, F&P, an appliance manufacturing company, acquired Dynamic Cooking Systems.  Kreuz's employment continued with F&P after the acquisition.  In 2007 or 2008, Kreuz was transferred from the "'parts department'" to work in reception where she reported to Finance Manager Sonia McAfee.

As the receptionist, one of Kreuz's primary responsibilities was to be available for incoming calls.  However, in performance reviews completed by McAfee for the years "2011/2012, 2012/2013, and 2013,"[3] McAfee noted that Kreuz "would physically leave the reception desk and miss phone calls."  In 2017, Vice President of Operations Keyur Shah complained to McAfee on several occasions about Kreuz's failure to answer telephone calls.

In March 2017, Executive Vice President of Worldwide Sales Laurence Mawhinney "became frustrated while attending a meeting because clients would ring the office doorbell but [Kreuz], although working as receptionist, was not around to answer."

---

[3]  Kreuz produced evidence of her written performance reviews completed from 2011 through 2013; Kreuz declared she received a performance review for 2016, but did not offer a copy of that review in opposition to the motion.  (Defendants did not produce evidence of Kreuz's performance reviews in support of the motion.)  Kreuz did not receive any performance reviews after 2016, explained perhaps by evidence F&P changed the performance management system it was using.  There is no evidence any employee received a performance review after 2016.

On April 6, 2017, Mawhinney expressed his frustration with Kreuz's "lack of job performance" to Kreuz's supervisors, stating, "'Every time (I am not exaggerating) I dial the main line it goes unanswered and then gets pushed to voicemail. What do our customers experience? We have [Kreuz] to do what exactly?'"

Kreuz declared that in addition to answering telephones and greeting guests, she had other duties that took her away from sitting at the receptionist desk. Those duties included ordering office supplies, delivering mail to personnel throughout the office in mornings, picking up incoming mail, and cleaning the office kitchen. She further declared F&P implemented an automatic answering service in 2017 to assist her in making sure all telephone calls were answered.

On March 15, 2018, Senior Human Resources Business Partner, Briana Heathcott, e-mailed defendant Aguilar, notifying Aguilar she had overheard Kreuz "treating clients 'less than professional'" and heard her refer to one of the customers as "'a dick.'"[4] Heathcott further notified Aguilar she had observed Kreuz working on a crossword puzzle during working hours.

II.

KREUZ IS ASSIGNED TO THE ACCOUNTS PAYABLE DEPARTMENT

In September 2018, F&P was preparing to open its "Experience Center," described as a building adjacent to its Costa Mesa office in which F&P appliances were to be set up and displayed in kitchen settings. F&P decided to relocate the receptionist's desk to the Experience Center "so that in-person visitors would be routed into the

---

[4] In her responsive separate statement, Kreuz stated she believed she conducted herself in a professional manner and further stated, "I don't recall using that word." (See *Miller v. Roseville Lodge No. 1293* (2022) 83 Cal.App.5th 825, 840 [witness's testimony he did not remember whether the lights were on is insufficient to create a triable issue whether plaintiffs could not reasonably discover concealed danger].) Kreuz further stated: "There was a point in time where I did talk to an angry customer, and after the phone call had ended, I just kind of mumbled under my breath that he was a jerk. There was nobody in the front office. That was not something I did on a regular basis."

showroom, and could view and experience F&P's products in realistic settings." Consequently, it became "all the more important" for the receptionist to be physically present at the desk to greet customers and answer telephones and otherwise "set the tone for visitors' first impression of F&P and its products." In light of Kreuz's track record of being away from the reception desk (at least more frequently than she should have been in the view of at least some observers), "there was concern at F&P whether she would meet F&P's expectations for performing receptionist duties once the desk was relocated to the Experience Center."

In September 2018, Connie Pharis asked Kreuz if Kreuz wanted to take over Pharis's accounts payable position when Pharis moved into a different role. Kreuz accepted the new position and testified at her deposition she was fine with stepping into the accounts payable position at that time. She explained the receptionist would be required to remain at the reception desk the entire time going forward and she had other duties that took her away from the reception desk.

That same month, F&P (1) recruited a dedicated receptionist who could be primarily focused on answering telephones and not being away from the desk, and (2) transitioned Kreuz to an accounts payable role where she would mainly do administrative work and assist as needed with answering telephones and greeting visitors. As she transitioned into her new role, Kreuz began reporting to Nereyda Henriquez with whom Kreuz got along very well. On November 1, 2018, F&P hired Emily Mueller, who was about 37 years old, to fill the then vacant receptionist position in the Experience Center.

III.

KREUZ'S PERFORMANCE PROBLEMS LEAD TO COUNSELING AND ULTIMATELY TO THE TERMINATION OF HER EMPLOYMENT

Kreuz was trained for her accounts payable duties three to four hours per day for two months. On November 12, 2018, Henriquez e-mailed Aguilar, stating

5

Kreuz's mistakes in accounts payable "'have been quite a few'" and "'if [Kreuz] did decide to stay within AP that [she] would start tracking [Kreuz's] mistakes . . . .'" Henriquez further stated she had offered Kreuz three choices: (1) to go back to the reception area; (2) to continue in her role where she worked "'half AP, and half clerical'"; or (3) become "full time AP."

Kreuz admitted she made mistakes in her accounts payable role. She told Pharis she needed more training because she was not understanding what she was doing. She told Pharis a couple of times that Pharis was going a bit too fast. Pharis responded she would try and work with her and be a little more careful on how she trained her and take more time.

On November 15, 2018, Kreuz told Henriquez she would like to return to reception. Aguilar agreed to honor that request, but because of her prior poor performance, she noted management would need to set clear expectations. Starting in mid-November, Kreuz began having weekly performance meetings with Aguilar, Kim, and Henriquez to address her mistakes. The weekly performance meetings went on for about eight weeks and were intended to not only set clear and objective performance expectations but to follow up on whether Kreuz was meeting those expectations.

During these meetings, no one ever raised their voice or used profanity toward Kreuz. Kreuz did not recall anyone during her employment ever making a comment or engaging in any conduct she felt was offensive or derogatory based on her age. Although she felt "harassed" by the criticism she received regarding her performance and her mistakes, she did not believe that harassment was based on her age.

During the November 29, 2018 weekly performance meeting, Kreuz was asked to come up with a list of work she could do while not covering reception. "During that meeting it was noted that [Kreuz's] tone on calls [was] problematic—her tone of voice and responses to calls sounded as if she was irritated with clients, and not willing to assist. Additionally, it was noted that [Kreuz] would fail to follow-through on key

6

projects." During this meeting, Kreuz stated she did not want to continue working in reception after all. As a result of that meeting, F&P "acceded to [Kreuz's] request and allowed her to transfer to a more AP/Administrative-centered role."

On December 7, 2018, Chief Financial Officer Graham Church complained Kreuz was "'making a lot of mistakes and we are not paying suppliers promptly as a result.'" He further noted because Kreuz was "'not interested in covering for the current Receptionist . . . we have run out of options now and the current role is causing more work for the team.'"

On December 10, 2018, during Kreuz's weekly performance meeting, Kreuz submitted a list of work she could accomplish, but it appeared Kreuz had put very little effort into creating it as it described work that could be viewed as taking less than 12 hours in a week.

On December 12, 2018, in an e-mail to Aguilar, Henriquez stated Kreuz "'has checked out, I really don't know what to do to motivate her anymore. I'll probably have a chat with her tomorrow to see how I can help her—but we really need that AP help asap.'" In her deposition, Kreuz agreed Henriquez had probably perceived that Kreuz had checked out. Kreuz also admitted "I just lost all motivation." She testified in her deposition that she "failed" because she received inadequate training. She also admitted she made mistakes that were not the result of inadequate training, such as losing invoices. In any event, she testified in her deposition she did not feel she was denied the training she believed she needed because of her age.

In her deposition, Kim testified it was her perception Kreuz would do the bare minimum asked of her. Around December 17, 2018, Kim learned Kreuz was "telling people" she would quit if she had to report to Kim. Kim was surprised to hear Kreuz said this because she felt she had taken a lot of time and effort to work with Kreuz and thought they had a good relationship. Kreuz felt she had a good relationship with everyone but Kim.

7

Around the end of December 2018, or the beginning of January 2019, Kevin Dexter (President, North America), Aguilar, Kim, and Henriquez collectively agreed Kreuz's employment should be terminated. Dexter, who was 52 years old at the time, made the final decision to terminate Kreuz's employment.[5]

On or about January 8, 2019, in a meeting with Kim, Aguilar, and Henriquez, Kim told Kreuz that because of performance issues, her employment would be terminated in two weeks.[6]

Kreuz's employment was terminated effective January 18, 2019. She was 62 years old at that time. No one was hired to replace her; instead, her former job duties were absorbed by existing staff.

PROCEDURAL HISTORY

In 2019, Kreuz filed a complaint alleging (1) age discrimination in violation of section 12940 et seq. against F&P (first cause of action); (2) harassment based on age in violation of section 12940, subdivision (j) against all defendants (second cause of action); (3) failure to prevent discrimination and/or harassment in violation of section 12940 et seq. against F&P (third cause of action); (4) wrongful termination in violation of public policy against F&P (fourth cause of action); and (5) unfair competition in violation of Business and Professions Code section 17200 et seq. against F&P (fifth cause of action).

In 2021, defendants filed a motion for summary judgment or, in the alternative, for summary adjudication. They argued there were no triable issues of

---

[5] Church's and McAfee's employment were terminated in December 2018. The record contains no evidence regarding the circumstances or reasons for their separations from F&P. Both were in their 50's at that time.

[6] The same day of this meeting, Mueller's employment was terminated.

8

material fact and Kreuz's claims failed as a matter of law.  In the alternative, defendants moved for an order adjudicating the following issues:

"Issue No. 1:  Plaintiff fails to prove a prima facie case of discrimination based on age because Plaintiff was not performing satisfactorily when terminated; therefore, Plaintiff's first cause of action for Age Discrimination must be summarily adjudicated in favor of Defendant Fisher & Paykel, Inc.

"Issue No. 2:  Plaintiff fails to prove a prima facie case of discrimination based on age because Plaintiff was not replaced by a substantially-younger employee; therefore, Plaintiff's first cause of action for Age Discrimination must be summarily adjudicated in favor of Defendant Fisher & Paykel, Inc.

"Issue No. 3:  Defendant had legitimate, non-discriminatory reasons for Plaintiff's termination; therefore, Plaintiff's first cause of action for Age Discrimination must be summarily adjudicated in favor of Defendant Fisher & Paykel, Inc.

"Issue No. 4:  Plaintiff cannot prove that any adverse employment action was based on a pretext to discriminate against her based on age; therefore, Plaintiff's first cause of action for Age Discrimination must be summarily adjudicated in favor of Defendant Fisher & Paykel, Inc.

"Issue No. 5:  There is no evidence that Plaintiff was subjected to age-based harassment; therefore, Plaintiff's second cause of action for Harassment based on age must be summarily adjudicated in favor of Defendants.

"Issue No. 6:  Because Plaintiff cannot support a cause of action for age-based harassment or age discrimination, Plaintiff's third cause of action for Failure to Prevent Harassment or Discrimination must be summarily adjudicated in favor of Defendant Fisher & Paykel, Inc.

"Issue No. 7:  Because Plaintiff cannot support a cause of action for age-based harassment or age discrimination, Plaintiff's fourth cause of action for Wrongful

Termination in Violation of Public Policy must be summarily adjudicated in favor of Defendant Fisher & Paykel, Inc.

"Issue No. 8: Because Plaintiff cannot support a cause of action for age-based harassment or age discrimination, Plaintiff's fifth cause of action for Violation of Business & Professions Code § 17200 et. seq. must be summarily adjudicated in favor of Defendant Fisher & Paykel, Inc."

In support of the motion, defendants produced, inter alia, excerpts from the depositions of Kreuz, Kim, and Aguilar, excerpts from F&P's responses to Kreuz's special and form interrogatories, and the declarations of Dexter and Aguilar.

Kreuz filed written opposition to the motion, in support of which she submitted, inter alia, her own declaration and excerpts from her deposition, as well as excerpts from the depositions of Kim, Aguilar, and Dexter, excerpts from F&P's responses to special interrogatories, and "relevant portions of [F&P]'s Employee Handbook, specifically [the] subsection titled 'Disciplinary Action.'" Kreuz does not contend she was unable to complete discovery before opposing the motion for summary judgment and did not seek a continuance of the motion.

The trial court granted the motion for summary judgment on the ground there were no triable issues of material fact as to any of Kreuz's claims. The trial court's minute order stated "Kreuz's and defendants' evidentiary objections were not material [to] the disposition of the motion. Cal. Civ. Proc. Code § 437c(q)." No party challenges the trial court's ruling as to the parties' evidentiary objections in this appeal.

The trial court entered judgment in favor of defendants and against Kreuz. Kreuz appealed.

## DISCUSSION

### I.

### STANDARD OF REVIEW

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action. [Citation.]" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

### II.

### AGE DISCRIMINATION CLAIM

In the first cause of action, Kreuz alleged against F&P a claim for age discrimination in violation of FEHA. FEHA declares it an "unlawful employment practice" to discharge a person from employment or discriminate against the person in the terms, conditions, or privileges of employment because of, inter alia, the person's age. (§ 12940, subd. (a).) In the complaint, Kreuz alleged F&P engaged in age discrimination by terminating her employment.

A. Burden-shifting Standard Applicable to FEHA Discrimination Claims

In *Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 820-822 (*Wilkin*), a panel of this court summarized the burden-shifting standard applicable to discrimination claims brought under FEHA as follows:

"'California uses the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of disparate treatment. (*Guz* [*v. Betchel National, Inc*. (2000)] 24 Cal.4th 317, 354 [(*Guz*)]; see *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*).) "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." [Citation.]

"'Under the *McDonnell Douglas* test, the plaintiff has the initial burden of establishing a prima facie case of discrimination. [Citation.] To meet this burden, the plaintiff must, at a minimum, show the employer took actions from which, if unexplained, it can be inferred that it is more likely than not that such actions were based on a prohibited discriminatory criterion. [Citation.] A prima facie case generally means the plaintiff must provide evidence that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held, (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests a discriminatory motive. [Citation.]

"'If the plaintiff establishes a prima facie case, then a presumption of discrimination arises, and the burden shifts to the employer to rebut the presumption by producing admissible evidence sufficient to raise a genuine issue of material fact the employer took its actions for a legitimate, nondiscriminatory reason. [Citation.] If the employer meets that burden, the presumption of discrimination disappears, and the plaintiff must challenge the employer's proffered reasons as pretexts for discrimination or offer other evidence of a discriminatory motive.' [Citation.]

12

"In *Scotch* [*v. Art Institute of California* (2009)] 173 Cal.App.4th [986,] at pages 1004-1005 [(*Scotch*)], a panel of this court addressed the application of the *McDonnell Douglas* test in the context of a motion for summary judgment: 'As *Guz* explains, several decisions suggest that when an employee opposes an employer's motion for summary judgment of a discrimination claim, the employer must make the initial showing of no merit and the *McDonnell Douglas* burdens are reversed. [Citation.] Other decisions suggest the plaintiff can survive the employer's summary judgment motion merely by presenting, at the outset, evidence satisfying the prima facie elements of *McDonnell Douglas*. [Citation.] *Guz* did not resolve the issue because the defendant in that case proceeded to the second step of the *McDonnell Douglas* test and produced admissible evidence sufficient to raise a genuine issue of material fact that its actions were taken for a legitimate, nondiscriminatory reason. [Citation.]

"'In *Kelly* [*v. Stamps.com Inc.* (2005)] 135 Cal.App.4th 1088, the court explained the *Guz* standard in light of the California Supreme Court's decision in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826: "A defendant employer's motion for summary judgment slightly modifies the order of these [*McDonnell Douglas*] showings. If, as here, the motion for summary judgment relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination. [Citations.] To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred. [Citations.] In determining whether these burdens were met, we must view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing [the plaintiff's] evidence while strictly scrutinizing defendant's."'" (*Wilkin, supra*, 71 Cal.App.5th at pp. 820-822.) In *Scotch, supra*, 173 Cal.App.4th at page 1005, the appellate court "agreed with and applied the standard set

13

forth in *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, in affirming summary judgment in favor of an employer as to a disability discrimination claim alleged under FEHA." (*Wilkin, supra*, at p. 822.)

B. F&P Met Its Burden of Presenting Evidence of Nondiscriminatory Reasons for Terminating Kreuz's Employment

In moving for summary judgment, defendants produced evidence showing Kreuz's employment was terminated for a nondiscriminatory reason—her poor performance. Specifically, defendants produced evidence showing Kreuz's supervisors observed and/or received complaints about Kreuz's poor work performance in the role of receptionist as follows: (1) as noted in performance reviews from 2011-2013, McAfee reported Kreuz would physically leave the reception desk and miss telephone calls; (2) in 2017, Shah complained to McAfee about Kreuz's failure to answer telephone calls; (3) in March 2017, Mawhinney became frustrated because Kreuz was not around to answer the door when clients rang the doorbell; (4) in April 2017, Mawhinney complained that every time he dialed F&P's main line, the call would go unanswered and would get pushed to voicemail, questioned what customers experienced, and asked what F&P has Kreuz do exactly; and (5) Heathcott informed Aguilar she overheard Kreuz treating clients "'less than professional,'" calling one of them "'a dick,'" and observed Kreuz working on a crossword puzzle during working hours.

Defendants also produced undisputed evidence that, notwithstanding receiving two months of training in accounts payable, Kreuz made several mistakes, including losing invoices. Despite weekly performance meetings with Aguilar, Kim, and Henriquez, Kreuz continued to make mistakes with consequences including F&P not paying suppliers promptly. In addition, within a couple of weeks, Kreuz asked to return to reception and then changed her mind about returning to the receptionist role. By December 2018, it appeared to Henriquez that Kreuz had checked out; Kreuz admitted

14

she had lost all motivation. Defendants produced evidence showing Dexter made the final decision to terminate Kreuz's employment, after consulting with Aguilar, Kim, and Henriquez, because of Kreuz's "continued inability or unwillingness to improve her job performance—despite F&P's demonstrated willingness to offer her a choice of job roles, flexible job duties, and the option to change departments and supervisors."

F&P, therefore, satisfied its burden of presenting evidence of nondiscriminatory reasons for Kreuz's employment termination to enable a trier of fact to reasonably find that, more likely than not, they were the bases for the termination of her employment. The burden therefore shifted to Kreuz to "'adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred. [Citations.]'" (*Scotch, supra*, 173 Cal.App.4th at p. 1005.)

C. Kreuz Did Not Present Any Evidence of Pretext

Our review of the record shows Kreuz failed to present any evidence that F&P's stated reasons for terminating her employment were "'either false or pretextual, or evidence that [F&P] acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated. [Citation.]' [Citation.]" (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886.) We address and reject Kreuz's arguments to the contrary that are contained in the opening brief.[7]

In her opening brief, Kreuz argues she produced evidence showing F&P's stated reasons for terminating her employment were pretextual. First, she points to evidence she was replaced by 37-year-old Mueller as the receptionist and that Mueller had been hired "well before" Kreuz had fully transitioned into the accounts payable role.

---

[7] Kreuz's opening brief does not cite *McDonnell Douglas* or its burden shifting standard.

15

The undisputed evidence, however, shows in September 2018, Pharis asked Kreuz if she would like to transition into Pharis's accounts payable position, and Kreuz accepted the offer, given the changes that were going to be made to the receptionist position and the uncertainty of how those changes would work with her other duties. Mueller was not hired until November 1, 2018.[8] That Kreuz continued to assist as needed with answering telephones and greeting visitors at the same time she also trained in the accounts payable department does not create a triable issue of material fact of pretext regarding the reason for her employment termination.

Second, Kreuz argues the month before her employment was terminated, F&P terminated the employment of Church (Chief Financial Officer) and McAfee (Finance Manager), both of whom were in their 50's at the time, and replaced them with younger individuals (McAfee was replaced by Henriquez). Kreuz admits, however, she has no information regarding the circumstances or reasons for Church's and McAfee's employment terminations or the hiring of their replacements.[9] It is undisputed that 37-year-old Mueller's employment was also terminated in this time frame. The record does not otherwise contain information regarding the ages of those within F&P's workforce or trends regarding the ages of employees who F&P has hired and fired.

---

[8] Citing Kim's deposition testimony, Kreuz suggests a triable issue of material fact exists regarding whether Mueller had been hired to replace Kreuz before Kreuz accepted Pharis's offer to transition into accounts payable. The relevant portion of Kim's testimony does not support such a suggestion:

"Q. And let me ask you, at this point, at any time *on or before January 18, 2019* [the effective date of Kreuz's employment termination], do you know if F&P had already started looking for a replacement receptionist or a replacement for Ms. Kreuz?

"A. We had already hired [Mueller] as a receptionist, and [Kreuz] took part in training [Mueller]. So the answer would be yes." (Italics added.)

[9] It is undisputed "[f]or any position that was filled while [Kreuz] was at F&P, [Kreuz] does not know whether there were any older applicants than the people F&P hired."

16

Viewing F&P's termination of the employment of Church and McAfee in a vacuum, therefore, cannot in and of itself create a triable issue of material fact that Kreuz's employment was terminated because of her age and not her work performance. Notably, both Church and McAfee were among those in F&P leadership who had been critical of Kreuz's job performance. In addition, Kreuz testified at her deposition she never heard anyone at F&P say anything she understood to mean F&P wanted to hire more young employees or wanted to rid itself of older employees.[10]

Third, Kreuz argues F&P's "failure to follow its own progressive discipline policy creates a strong inference of discriminatory intent and pretext." (Boldface and capitalization omitted.) In opposition to the motion for summary judgment, Kreuz produced a section from F&P's Employee Handbook (April 2016) entitled "Disciplinary Action" which states:

"The Company reserves the right to administer disciplinary rules and procedures based upon its interpretation of the facts of the incident(s) and to adapt disciplinary procedures or use immediate termination when such actions may be in the best interest of the Company. The Company enforces a progressive discipline for violations of its policies and procedures as follows:

"1. Verbal Warning

"2. Written Warning

_____

[10] In her opening brief, Kreuz states that after relocating the reception desk to the Experience Center, "it became quite evident to [Kreuz] that [defendants'] true motive behind becoming a 'premium company' was simply to replace all of its older employees with younger ones in order to target younger 'premium' customers." But Kreuz testified in her deposition that she never heard anyone at F&P say anything that she understood to mean F&P was targeting a younger clientele. (See *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150*, 1159 (*Featherstone*) ["The employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact . . . .' [Citation.] The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.'"].])

17

"3.  Suspension

"4.  Termination of employment.

"The Company reserves the right to accelerate the disciplinary process, up to and including termination, depending on the nature and severity of the violation.  In that regard, employees are forewarned that certain types of conduct are likely to result in immediate termination.  These include (for example only and are not limited to) unauthorized removal of company or other employee's property, dishonesty, breach of confidentiality, (not to include the disclosure or discussion of wages as protected by federal and/or state law) fighting, insubordination, deliberate violation of policies and practices adopted by this office, and any other unlawful conduct that negatively effects [*sic*] the Company's business operations."

Kreuz offered no evidence regarding the effectiveness of this policy in 2018, its application to Kreuz's poor performance issues, or its enforcement (or lack thereof) as to F&P employees other than Kreuz.  (She has not argued she had insufficient time to conduct discovery.)  Kreuz has simply produced the policy itself, again, in a vacuum.

It is unclear whether the policy was intended to apply to performance issues; it references "violations" and "unlawful conduct."  (See *Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 465, fn. 2 ["It appears that [the employee] attempted to establish that [the employer] failed to follow its progressive discipline policy, as outlined in the employee handbook, when it provided performance feedback to [the employee].  However, [the employer's general counsel] repeatedly testified that the progressive discipline policy was only meant to apply [to] 'things like theft, an illegal act, coming to work intoxicated, [or] repeated absences,' and not performance issues.  Thus, the invocation of [the employer's] progressive discipline policy was inapposite, as there was never an allegation of misconduct covered by the progressive discipline policy"].)

18

In any event, on its face the policy reserves F&P the right to adapt disciplinary rules and procedures it administers, or "use immediate termination" based on the situation and when in the best interests of F&P. Kreuz has offered no evidence that in her case, F&P applied or failed to apply this policy in a manner that was in any way different from how it was applied to younger employees.

Finally, Kreuz argues she was given "excessive harsh criticism for minor clerical errors during [the] weekly performance meetings, in efforts to push her out of F&P." Again, Kreuz has not offered any *evidence* describing the mistakes she deemed minor, or the criticisms she deemed unduly harsh.

"To show that an employer's reason for termination is pretextual, an employee '"cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."' [Citation.] To meet his or her burden, the employee '"must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,'"' and hence infer '"that the employer did not act for [the asserted] non-discriminatory reasons.'"' [Citation.] '[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a motive to discriminate illegally. Thus, "legitimate" reasons [citation] in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination.' [Citation.]" (*Featherstone, supra*, 10 Cal.App.5th at pp. 1159-1160, italics omitted.)

In sum, accepting all of Kreuz's evidence, we conclude she failed to meet her burden to '"adduce or point to evidence raising a triable issue, that would permit a

19

trier of fact to find by a preponderance that intentional discrimination occurred.' [Citation.]" (*Scotch, supra*, 173 Cal.App.4th at p. 1005.) The trial court, therefore, properly granted summary judgment in favor of F&P on the first cause of action for age discrimination.

## III.

## HARASSMENT CLAIM

Kreuz's second cause of action for harassment based on age in violation of FEHA is the only claim she has alleged against individual defendants Kim and Aguilar along with F&P. (See *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 38 [liability for claims of harassment is broader than for claims of discrimination and extends to individual supervisory employees].)

For the reasons we explain, defendants carried their burden of showing Kreuz cannot establish one or more of the elements of a claim for harassment based on age in violation of FEHA and Kreuz thereafter failed to show a triable issue of material fact exists as to the claim.

A. Governing Legal Standards

Under FEHA, it is unlawful "[f]or an employer . . . or any other person, because of . . . age . . . to harass an employee . . . ." (§ 12940, subd. (j)(1).) In order to establish a prima facie case for harassment under FEHA, a plaintiff must show not only that she belongs to a protected group (e.g., age under § 12940, subd. (j)(1)), but must also show: the plaintiff was subjected to unwelcome harassment; the harassment complained of was *based on* the plaintiff's protected status; the harassment unreasonably interfered with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and the defendant is liable for the harassment. (*Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 581; *Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876.)

Harassment includes verbal harassment ("e.g., epithets, derogatory comments or slurs on a basis enumerated in [FEHA]"), physical harassment ("e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in [FEHA]"), and visual forms of harassment ("e.g., derogatory posters, cartoons, or drawings on a basis enumerated in [FEHA]"). (Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(A)-(C).) Such "harassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706, italics omitted.)

"""[H]arassment consists of *conduct outside the scope of necessary job performance*, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. . . . [¶] . . . [¶] . . . [C]*ommonly necessary personnel management actions . . . do not come within the meaning of harassment. . . .* These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. . . . This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA."" [Citation.]" (*Roby v. McKesson Corp., supra*, 47 Cal.4th at p. 707, italics added, fn. omitted.)

B. Summary Judgment of the Harassment Claim Was Proper

Kreuz testified at her deposition she did not recall anyone at F&P ever making a comment she felt was offensive or derogatory based on her age. She also testified, other than receiving criticisms of her work performance from Aguilar, Kim, and Henriquez, Kreuz did not experience what she considered harassment by anyone at F&P.

21

As to the criticisms of her work performance, in her deposition testimony, Kreuz disavowed that such criticisms constituted harassment based on her age, testifying as follows:

"Q. . . . Do you recall the harassment starting with the criticism of mistakes that you made in accounts payable duties was also based on your age?

"A. No, I don't think that had anything to do with my age. Here again, that just goes back to the inadequate training that I received for the tasks that I was being trained for.

"Q. So do you feel that you were denied adequate training for these AP tasks based on your age?

"A. No, it had nothing to do with my age.

"Q. Why did you feel you didn't get adequate training for these AP tasks?

"A. The training I received from Connie Pharis, who was training me, she was getting ready to step up into a[n] accounts payable role, but she was unable to do that until I was trained to take over her position. So when she would train me, we would get done with one task, and she would start in on another when I was still trying [to] comprehend what she just trained me on. [¶] I just felt like everything was thrown at me one task after another. I just didn't feel I got the time—I didn't feel she spent the time with me for training that she should have.

"Q. Was there some urgent need for Ms. Pharis to step into a different role at the company, if you know?

"A. I honestly don't know. I don't know how urgent that position was looking for somebody." (See *Moore v. William Jessup University* (2015) 243 Cal.App.4th 427, 432, fn. 2 ["admissions made during discovery govern over contrary declarations submitted in support of summary judgment"].)

In addition, Kreuz admitted that some of the mistakes she made (e.g., losing invoices) were not due to any lack of training. Kreuz testified in her deposition that she

found it helpful to have her mistakes identified in the weekly performance meetings at which no one ever raised their voice or used profanity toward Kreuz.

The undisputed facts, and in particular Kreuz's deposition testimony, establish Kreuz's harassment claim fails as a matter of law because it is entirely based on ordinary personnel decisions made without regard to age. (See *Reno v. Baird* (1998) 18 Cal.4th 640, 645-646 [ordinary personnel decisions cannot give rise to a FEHA harassment claim because "'harassment consists of a type of conduct not necessary for performance of a supervisory job'"].) The trial court therefore did not err by granting summary judgment as to Kreuz's harassment claim.

IV.

CLAIM FOR FAILURE TO MAINTAIN AN ENVIRONMENT FREE FROM
DISCRIMINATION AND/OR HARASSMENT

In the third cause of action, Kreuz alleged F&P failed to provide an environment free from discrimination and harassment in violation of FEHA. An employer cannot be liable for failure to prevent discrimination or harassment, however, if there is no actionable discrimination or harassment in the first place. (See *Caldera v. Department of Corrections & Rehabilitation, supra*, 25 Cal.App.5th at p. 44 ["There can be no liability for an employer['s] failure to prevent harassment claim unless actionable harassment occurred"]; *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1315; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 ["Employers should not be held liable to employees for failure to take necessary steps to prevent [harassment or discrimination], except where the actions took place and were not prevented"].)

Because we affirm summary judgment on Kreuz's FEHA causes of action for age discrimination and harassment for the reasons discussed *ante*, we also affirm summary judgment on the claim F&P failed to provide an environment free from discrimination and harassment.

23

## V.

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM

In the fourth cause of action, Kreuz alleged F&P terminated her employment in violation of public policy. "Apart from the terms of an express or implied employment contract, an employer has no right to terminate employment for a reason that contravenes fundamental public policy as expressed in a constitutional or statutory provision. [Citation.]" (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252.)

Kreuz's wrongful termination in violation of public policy claim was based on her claim F&P violated FEHA by terminating her employment. For the reasons discussed *ante*, there are no triable issues of material fact as to Kreuz's FEHA claims. Consequently, her claim for wrongful termination in violation of public policy fails as a matter of law. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 [because the plaintiff's FEHA claim failed, his wrongful termination claim also failed].)

## VI.

### UNFAIR COMPETITION CLAIM

As to the fifth cause of action for unfair competition, Kreuz alleged in her complaint: "Defendant . . . [has] in the course of business committed acts and/or omissions and engaged in a practice of unfair competition, as defined by California Business & Professionals Code section 17200 et seq., including but not limited to discriminating against [Kreuz] on the basis of her age, and/or violations of law and by terminating [Kreuz's] employment at least in part due to her age."

"'"By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."' [Citation.] . . . Thus, when the underlying legal claim fails, so too will a derivative [unfair competition law] claim. [Citation.]" (*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 950.)

24

Here, Kreuz's unfair competition claim was entirely based on her claims defendants engaged in age discrimination and harassment based on age in violation of FEHA.  As noted *ante*, all of Kreuz's FEHA causes of action were properly resolved in favor of defendants on summary judgment.  Therefore, summary judgment on this cause of action was also proper.


DISPOSITION

The judgment is affirmed.  Respondents to recover costs on appeal.



MOTOIKE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.