Filed 3/5/25  Lee v. Antelope Valley Learning Academy CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| STEVEN LEE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ANTELOPE VALLEY<br>LEARNING ACADEMY, INC.,<br><br>    Defendant and<br>Respondent. | B337734<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV38319) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

Jaurigue Law Group, Michael J. Jaurigue; KP Law and Zareh A. Jaltorossian for Plaintiff and Appellant.

Buchalter, Kevin T. Collins, Phillip Chan and Robert M. Dato for Defendant and Respondent.

Steven Lee appeals from a judgment entered after the trial court granted summary judgment in favor of respondent Antelope Valley Learning Academy, Inc. (AVLA), on Lee's claims of retaliation, race discrimination, wrongful termination and failure to prevent discrimination. The trial court alternatively held Lee's complaint and first amended complaint (FAC) were subject to a motion for judgment on the pleadings because the FAC failed to state a cause of action. We find no error and affirm the judgment.

## FACTUAL BACKGROUND

### Lee's employment history

Lee began working for AVLA on October 4, 2004.[1] Lee is of Asian descent. AVLA is a public charter high school in Palmdale. Lee held the position of English teacher until his termination on January 21, 2022.

Lee received a copy of AVLA's Employee Handbook, which describes AVLA's policies and procedures. The handbook identifies the following conduct as violating the standards of conduct: "[u]nprofessional" conduct and "[a]ny other conduct detrimental to other employees or [AVLA's] interests or its efficient operations."

---

[1] While Lee's complaint asserts he began working for AVLA on October 4, 2004, it appears from October 2004 until June 2012, Lee worked for Desert Sands Charter High School, which is an affiliate of AVLA. Around 2012, Lee was hired as an English teacher at AVLA. Although the entity "Learn4Life" is referred to throughout the record, it is never defined in the record. Learn4Life appears to be an organization that includes several schools, including Desert Sands Charter High School and AVLA.

From September 2018 to the time of Lee's termination, Taera Childers was at the top of the bureaucratic hierarchy as the area superintendent. From October 2013 to 2021, the time period relevant to most material events in this case, AVLA's school principal was Marcello Palacios. Lee reported directly to Palacios.

Over the course of his employment, Lee received satisfactory performance reviews, often receiving mid-range marks for "meets standards." Lee received some "exceeds standards" marks for categories such as individualized attention to students, organizational culture, punctuality and creativity.

During his employment at AVLA, Lee applied for various positions in other schools owned and operated by AVLA. In approximately 2011, he applied to transfer to a different school. The principal at that time was a white woman, who made the decision not to grant his transfer. In 2015, Lee applied to transfer to another school called Mission View Public Charter. Childers, also a white woman, was then principal at that school and decided against his transfer. Lee also attempted to transfer to a school in 2015, where Jessica Sherlock, another white woman, was the principal and who also made the decision not to grant Lee's transfer.

In 2016 or 2017, Lee learned of two teacher training opportunities at AVLA that had never been made known to him. Lee was not allowed to apply for these opportunities. The spots were filled by a white woman and a Hispanic man, both of whom had significantly less experience than Lee. Lee missed an opportunity to advance his career when he was not selected for these roles. Around the same time, a position opened for athletic director. Lee felt he was uniquely prepared for the role, but it

3

was never advertised, and he was not allowed to apply. Instead, a white man was given the position.

On July 12, 2016, Lee e-mailed Palacios and Alexander Morris, assistant vice-principal, formally requesting to be considered for the English department chair position. The panel interview included Childers, Palacios, and Morris. The panel did not choose Lee and instead chose a white woman.

In around November 2018, Lee began noticing racial discrimination in the form of disproportionate employee recognition. He noticed he was not receiving recognition for his contributions and accomplishments in comparison to non-Asian employees.

In March 2019, during a meeting between Lee, a student, and her parents, it was discovered that Lee withheld credits that the student submitted during one learning period and instead submitted them in the following learning period. As a result, Lee received a written "confirmation of conversation," a written disciplinary action, to be placed in his file. Lee was informed his action was "in violation of [AVLA's] compliance policy, and will not be tolerated." Lee was warned, "You are to immediately and permanently abstain from holding credits to submit during another Learning Period. You are directed to adhere to compliance procedures, and notify site Administration if you are unable to submit credits by the due date. Not being forthcoming about missing deadlines, and holding credits will not be tolerated." Childers testified, "Given the severity of the offense, AVLA considered terminating Lee's employment in April 2019, but given his years of service and that it was his first offense, his employment was not terminated."

4

In July 2019, Lee received an e-mail announcing a new class for the fall term called Synthesis of Literature, Art and Media (SLAM). He felt uniquely prepared to teach the course. On July 8, 2019, Lee asked Palacios about teaching the class, and Palacios informed Lee he had already filled the position with a white woman. Palacios opened a second SLAM position, which he offered to Lee, but the training for the class was taking place only two days after Lee was offered the position and Lee was unable to make arrangements to be there.

In October 2019, Lee sent a letter to Jeri Vincent, an officer of Lifelong Learning Administration Corporation (LLAC), which provides human resources and other administrative services to AVLA. In the letter, Lee detailed the reasons why he felt the need to change his work environment. He described a "culture of fear and apathy" leaving teachers feeling "if they speak up, they will face retaliation." Lee described the problem in five categories, which he titled "Hiring Practices, Teacher Workload, Statistics/Data, Fairness and Equitable Compensation, and Work Conditions." He noted that schools should provide equal opportunities for everyone to apply for jobs and the importance of making sure candidates have "the proper qualifications and experience to do the job." Lee's detailed description of the problems with hiring practices at AVLA did not mention race or racism. Lee described some teachers having more students than others, detailed problems with AVLA being a "data-driven school," and offered an explanation for the "Confirmation of Conversation" he received in April 2019. In the section of his letter entitled, "Work Conditions," Lee described the problem with teaching pods and mentioned being passed over for the

position of English department chair. However, there was no mention of race or racial discrimination in the entire letter.

In November 2019, Lee met with Chad Gray of LLAC, who was LLAC's chief human resources officer. Vincent had forwarded Lee's October 2019 letter to Gray. Lee asserts he "raised concerns about racial discrimination in the company's hiring and promotions process, but nothing else ever came of this conversation." Gray investigated Lee's complaint immediately but concluded there was no evidence of any discrimination against him. Gray informed Lee of his findings at the time.

**Lee's 2021 performance review and complaints of racial discrimination**

In May 2021, Lee received his 2021 performance review from Palacios. He was given six ratings for exceeds expectations; 17 ratings for meets expectations, and an overall rating of meets expectations. Lee "felt [his] review significantly underrepresented" what he felt was his "best performance to date and surpassing my own previous performance records and that of many other teachers at AVLA." He complained to Palacios that he felt his review underreported his performance.

Palacios invited Lee to provide an additional explanation and evidence for his consideration. Lee did so. On June 28, 2021, Palacios sent a revised 2021 performance review for Lee's signature. He had changed two of the ratings that were previously "meets" expectations to "exceeds" expectations. Palacios added some, but not all of the information Lee had provided. Lee refused to sign his review and expected Palacios to discuss it with him further, but that did not happen.

In July 2021, "after receiving an email 'from the desk of Chad Gray' regarding a new Performance Management

Framework, and still feeling [his] 2021 Performance Review was still disproportionately low and not reflective of [his] actual performance," Lee made another complaint of racial discrimination. In an e-mail to Gray,[2] Lee noted, "I have faced discrimination at this company, and even though I provided documentation of evidence to you a few years ago, it just keeps happening to me." Lee noted his "numbers" during the 2020-2021 school year were the best he had ever achieved, and he was "99% sure, these are the best numbers a teacher has ever had in the history of Learn4Life." Lee again complained that his evaluation consisted of "meets expectations" ratings rather than "exceeds expectations" ratings and that Palacios had not reached out to him to discuss the situation further. Lee noted, "Whether or not the blatant professional discrimination was because I'm Asian or for some other reason, the administrators have continued to overlook the facts when it comes to evaluations."

In Gray's August 2, 2021 acknowledgement of Lee's e-mail he observed the organization takes all allegations of discrimination seriously and offered to meet with Lee regarding his concerns. Lee declined to meet with Gray but on August 9, 2021, sent an e-mail with more detailed allegations describing his belief that his June 2021 evaluation was inadequate and that he has been the victim of racism during his years with AVLA. Gray responded that Attorney Adam Miller had been hired to handle the investigation into Lee's claims.

On October 4, 2021, Miller provided Gray with a memorandum describing the results of his investigation of Lee's

---

[2]    Lee's e-mail was directed to Gray, Colby Thornton, and Peter Faragia, all of whom worked at LLAC.

7

allegations of racial discrimination. The investigation included a review of over 300 documents, most of which were provided by Lee. Miller noted, "Although the initial complaint prompting this investigation revolved around racial discrimination, it appeared that the nature of the complaints are across the board, from dissatisfaction of business decisions, to disapproval of selection of the English Department Chair, to not being selected as the SLAM poetry teacher." Lee "did not identify any witnesses that would know of the racial discrimination." Miller concluded, "There was not enough evidence to establish the veracity of any of the claims, much less any claims of racial discrimination. What was clear was that Mr. Lee believes that he is the best teacher in the school and perhaps in the entire Learn4[L]ife network. Therefore, no action is recommended at this time."

After Miller completed his report, Lee provided the telephone number of Lori Johnston, a witness Lee said Miller should contact. Johnston denied that Lee "had ever experienced any racial discrimination in her presence."

Still believing his 2021 performance review failed to accurately reflect the strength of his performance, Lee e-mailed area superintendent Childers in late October 2021 and reiterated his belief his numbers were a "20-year company record" and noted Palacios did not put "most of this stuff in my teacher evaluation." Lee stated, "If you truly want your region to do better, then I hope you will agree to meet with me. [M]any people know what kind of numbers I get, . . . and yet, my voice is ignored and has been ignored for many years." He claimed that if he had been appointed athletic director, he could have made the school "millions" of dollars from the sports program. Lee

attached a document he created entitled "Commendations," highlighting his purported achievements at AVLA.

On November 5, 2021, Childers met with Lee. In preparation for the meeting, Childers and a colleague spent approximately eight hours "analyzing and compiling data from AVLA's Student Information System . . . to evaluate the data supporting Lee's apparent achievements in the 'Commendations' document. The data showed Lee's achievements were misrepresented and inaccurate." When Childers met with Lee, she informed him that his representations were inaccurate, and his performance was "average to slightly above average." While Lee was a good teacher, others were also doing great work. Childers informed Lee "his negative attitude was detrimental to his success and that his negativity was affecting others." Childers stated that Lee never said anything in the meeting about race discrimination, retaliation based on race, or any union activity. Lee testified he raised the issue of racial discrimination at the meeting. Childers's handwritten notes from the meeting contain one line stating: "favor[i]tism, racism, nepotism→only 1 example." Childers testified Lee was "just throwing out" reasons he thought the school was bad, and when she asked him to give specific examples of such things, Lee only provided one example, and it was an example of nepotism, not racism.

On December 2, 2021, Lee e-mailed Childers, stating they had a discussion about a union, but they did not discuss a union.

Following the meeting, Childers decided to terminate Lee's employment. Childers testified Lee was terminated because "Lee had made false and groundless claims about his job performance in his 'Commendations' document and in our meeting. His unsupported claims required me and my staff to conduct

9

unnecessary research into his claims which wasted several hours. Lee's conduct was unprofessional and detrimental to AVLA's interests and efficient operations. Lee's conduct violated AVLA's policies. Also, Lee had a negative attitude in the workplace which was affecting others." When she made the decision to terminate Lee, Childers was not aware he made any complaints about race discrimination, and such complaints were not a factor in her decision.

**Lee's termination**

Although Childers made the decision to terminate Lee after their November 2021 meeting, she did not want Lee to be unemployed during the holidays. She therefore decided to terminate his employment in January 2022. Although she planned to tell Lee herself, her father became ill with COVID and passed away during this time period. Childers asked Miller and a human resources employee, Nicole Perkins, to meet with Lee, which they did in January 2022. Lee was informed his employment was terminated. No reason for his termination was given.

Lee contends the manner in which he was terminated deviated from normal procedures for termination. In Lee's 17 years of service, every teacher he had seen terminated was given a warning, had at least one write-up on their work record, had an educational supervisor present at the termination, was fired at the school site, and was given the opportunity to collect his or her belongings immediately after termination and before leaving the school building. Lee was terminated at the corporate building and was asked to collect his belongings at a predetermined time when no one else was present.

## PROCEDURAL HISTORY

On December 8, 2022, Lee filed an administrative complaint with the Civil Rights Department (formerly known as the Department of Fair Employment and Housing). He received a notice of closure and right to sue letter, and filed his original complaint the same day.

Lee subsequently filed the operative FAC, in which he asserted five causes of action: race discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.); retaliation in violation of FEHA; failure to prevent discrimination, harassment, and/or retaliation in violation of FEHA; retaliation for reporting illegal violation under Labor Code section 1102.5; and wrongful termination in violation of public policy.

On November 3, 2023, AVLA moved for summary judgment or, in the alternative, summary adjudication. AVLA argued Lee's racial discrimination claims based on the alleged denial of positions were time-barred because those acts occurred no later than 2019, and Lee's complaint was not filed until 2022. AVLA also argued Lee failed to show a discriminatory motive, and it terminated Lee for legitimate, nondiscriminatory reasons—specifically, Lee's misrepresentations in his "Commendations" document he presented to Childers prior to their November 5, 2021 meeting.

Lee opposed the motion, arguing he established a prima facie case of discrimination and retaliation and that none of his claims were time-barred under the continuing violations doctrine. He further argued AVLA had not provided evidence of a nondiscriminatory motive for terminating him, and he presented evidence of pretext.

On January 25, 2024, the trial court filed a detailed order granting AVLA's motion for summary judgment in full. The court found there was no triable issue of fact as to any of Lee's causes of action. As to Lee's claim for racial discrimination, the court found no evidence from which a reasonable fact finder could infer the employer's motivation was discriminatory. The court noted "there is no evidence showing that AVLA had a discriminatory motive based on Lee's race with respect to any decision." Even if Lee had met his burden of showing a prima facie case, AVLA met its burden of asserting legitimate, nondiscriminatory reasons for its actions. Further, the continuing violations doctrine did not apply to Lee's claims that he was passed over for various positions.

As to Lee's claim for retaliation in violation of FEHA, the trial court found AVLA offered legitimate, nondiscriminatory reasons for Lee's termination, and Lee's argument that temporal proximity between his meeting with Childers and his termination was insufficient to create a prima facie case of retaliation. Even if it were sufficient, Lee failed to show AVLA's legitimate reasons for terminating him were pretextual.

Having concluded Lee did not establish a triable issue of fact as to his claims for discrimination or retaliation, Lee's cause of action for failure to prevent discrimination, harassment and/or retaliation also failed.

Lee's cause of action for violation of Labor Code section 1102.5 failed because there was no evidence any of Lee's complaints were a contributing factor in AVLA's decision to terminate his employment. Having determined Lee failed to establish a triable issue of material fact as to his FEHA and Labor Code claims, the court concluded there was no triable issue

12

of material fact as to his claim of wrongful termination in violation of public policy.

The court filed a second order on January 25, 2024, stating, "In addition to there being grounds stated on this Court's 'Order Granting Defendant's Motion for Summary Judgment', it is also the law that a Court may grant a summary judgment in any case where a judgment on the pleadings under Code of Civil Procedure could also be granted. That is the case here . . . ." The court found Lee's complaint "at all times failed to state a cause of action. It set forth nothing more than opinions and speculation with no facts supplied that would . . . serve to . . . support a basis for this Plaintiff's subjective conclusions that what has been alleged transpired in the workplace, such as not receiving a desired job assignment, has been motivated by or in any way based on the discriminatory factors he relies upon."

On March 25, 2024, Lee filed his notice of appeal from the judgment.

## DISCUSSION

### I. Applicable law and standard of review

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) On appeal from an order granting summary judgment, we independently review the record in order to determine whether triable issues of fact compel reinstating the action. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) In performing this review, we view the evidence in the light most favorable to the losing party. (*Ibid.*) "There is a triable issue of

13

material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

Our role is to "determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)

California has adopted a three-stage burden-shifting test to analyze claims of retaliation or discrimination under FEHA. (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802–806 (*McDonnell Douglas*); *Guz, supra*, 24 Cal.4th at p. 354.) Under this framework, the "plaintiff has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion. A prima facie case establishes a presumption of discrimination. The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. If the employer discharges this burden, the presumption of discrimination disappears. The plaintiff must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive." (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214–215 (*Harris*).)

14

## II.    Retaliation[3]

Lee asserted a cause of action for retaliation in violation of FEHA as well as a cause of action for retaliation in violation of Labor Code section 1102.5.  We discuss each cause of action for retaliation below.

### A.    *FEHA retaliation claim*

FEHA prohibits employers from deciding to "discharge, expel, or otherwise discriminate against" an employee for "oppos[ing] any practices forbidden under [Government Code section 12900 et seq.]."  (Gov. Code, § 12940, subd. (h); see *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1162.)  The employee can establish a prima facie case of retaliation under FEHA by showing the employee "'engaged in a protected activity, his employer subjected him to adverse employment action, and there is a causal link between the protected activity and the employer's action.'"  (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018 (*Gemini*).)  While timing alone is generally insufficient to prove unlawful retaliation (*Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 930–931), "'temporal proximity, *together* with . . . *other* evidence, may be sufficient to establish pretext'" (*Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913, 932).

#### 1.    *Prima facie case*

Lee argues that he engaged in protected activity (complaining about racism) and suffered an adverse employment action (termination).  The issue in this appeal is whether Lee has

---

[3]    We discuss Lee's causes of action in the order in which he has presented them in his opening brief on appeal.

15

presented evidence suggesting a causal link between his complaints of racial discrimination and his termination.

We find that he has not. Lee has failed to present evidence that Childers, who made the decision to terminate Lee, had any knowledge of his prior complaints of racial discrimination, which were made directly to LLAC. Childers testified she was unaware of Lee's complaints of racial discrimination, and Lee presents no evidence to the contrary. While Lee contends he raised the issue of racial discrimination in his conversation with Childers on November 5, 2021, which precipitated his termination, Lee's declaration states: "During this meeting, I also informed Ms. Childers that there were significant issues at AVLA, especially with hiring practices and advancement opportunities. I told her I felt that AVLA primarily hires White and Latino people and complained of 'favoritism.' I also specifically complained of racism at AVLA and explained that I believed race was playing a role in many of these hiring practices and had negatively affected me over the course of my employment." Childers's handwritten notes from the meeting contain one line reading: "favor[i]tism, racism, nepotism," then specify: "only 1 example." While Childers acknowledged that Lee "thr[ew] out" the term racism generally, she testified the only specific example he gave was nepotism. Lee's declaration does not state that he raised any particular instance of purported racism that he experienced, nor that he put Childers on notice as to any specific conduct.

Even if a jury believed Lee's statements about what he said in the meeting with Childers, his vague, nonspecific reference to racism is insufficient to constitute a protected activity. "Although an employee need not formally file a charge in order to qualify as

16

being engaged in protected opposing activity, . . . complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1047, fn. omitted (*Yanowitz*).)  The employee's words must "'sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.'"  (*Ibid.*)  Lee's nonspecific statements that race "was playing a role" in hiring practices and had "negatively affected" him are too vague to put the employer on notice of reasonable concerns of unlawful discrimination.  Lee did not raise specific examples of alleged racism, nor did he mention any specific race, nor any specific employment decision giving Childers notice that his complaints were anything more than conclusory accusations.

Other than Lee's vague reference to racism in their meeting, he has presented no evidence that Childers, who made the decision to terminate Lee's employment, had any knowledge that Lee had previously raised the issue of racial discrimination with LLAC.  "'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.'"  (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 70.)  Lee has presented no such evidence.  Without knowledge of Lee's specific accusations of racism, Childers cannot be charged with a retaliatory motive.

An employer is entitled to summary judgment "'if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.'"  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830,

17

861.)  "It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive."  (*Id.* at p. 862.)  The evidence in this case is insufficient to permit a rational inference that Childers's motivation was retaliatory.

Lee argues the temporal proximity between his expression of his concerns of racial favoritism to Childers and her decision to terminate him is sufficient to show a retaliatory motive.  Childers made the decision to terminate Lee immediately following the November 5, 2021 meeting.  Lee cites *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 353 (*Arteaga*) for the proposition that "the temporal proximity between an employee's disclosure . . . and a subsequent termination may satisfy the causation requirement at the first step of the burden-shifting process."

Lee's temporal proximity argument fails because there is no evidence Childers was aware of Lee's protected activity of making complaints of racism to LLAC.  His vague reference to racism, along with other "-isms," in the November 2021 meeting was insufficient to constitute a protected activity.  Thus, there was no connection between any protected activity and Lee's termination.[4]

_____

[4]  Further, even if Lee could make out a prima facie case, the *Arteaga* case makes it clear that "temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination."  (*Arteaga, supra,* 163 Cal.App.4th at p. 353.)  AVLA offered evidence that Lee's termination was because of the false and misleading claims made in his "Commendations" document, his negative attitude in the workplace, and his unprofessional conduct, which was time consuming, detrimental

Where an employer's reasons for termination are "manifestly unrelated to intentional . . . bias," they are "legally sufficient to establish [a plaintiff's] FEHA cause of action had no merit." (*Guz, supra*, 24 Cal.4th at p. 360.) Lee has failed to show a causal link between his complaints of racial discrimination to LLAC and Childers's decision to terminate him. Absent such a causal connection, Lee's claim for retaliation under FEHA fails.

### 2. *Pretext*

As we have found Lee has failed to set forth a prima facie case of retaliation under FEHA, there is no evidence from which a reasonable trier of fact could infer a causal link between his complaints of racism to LLAC and his termination by Childers. Therefore, we need not address the issue of pretext. However, we note Lee's evidence of pretext is also insufficient.

In support of his argument that AVLA's reasons for terminating him were pretextual, Lee points to the timing of the termination coupled with his employment record. Lee cites *Gemini, supra*, 122 Cal.App.4th at page 1023 for the proposition that pretext "'may also be inferred from the timing of the company's termination decision, by the identity of the person making the decision, and by the terminated employee's job performance before termination.'" Lee asserts again that Childers was aware of his complaints of race discrimination and points out that Lee was an 18-year employee who had garnered consistently strong performance reviews during his long career at AVLA.

---

to AVLA, and violated AVLA's policies. The temporal proximity between the November 5, 2021 meeting and Lee's termination does not rebut ALVA's legitimate, nondiscriminatory reasons for his termination.

*Gemini* is distinguishable in several respects. In *Gemini*, the plaintiff asked his supervisor for time off for his religious observation. His request was denied, but he took the time off anyway. The plaintiff's supervisor, who had denied the request, was also a member of the management committee, which ultimately made the decision to suspend and then terminate the plaintiff's employment. (*Gemini, supra*, 122 Cal.App.4th at p. 1010.) Thus, unlike the facts of this case, the individual to whom the plaintiff made complaints of religious discrimination was responsible for the adverse employment actions that followed. The *Gemini* court noted, "the employer's awareness of the protected activities and adverse action that followed within a relatively short time" showed a sufficient causal connection. (*Id.* at p. 1020.) As set forth above, no such causal connection has been shown here.

Further, the *Gemini* plaintiff's job performance was "[m]ost telling" in establishing pretext. The employee "had perfect attendance in the fifteen months that he worked at Gemini. He worked a double shift when necessary. [He] was originally hired to supervise all three extrusion shifts, and would voluntarily put in 12-hour days . . . ." (*Gemini, supra*, 122 Cal.App.4th at p. 1023.) There was testimony the plaintiff "was the most qualified and experienced individual" the manager "had ever hired in his 45 years in the extrusion business." (*Id.* at p. 1024.) While Lee's employment record was good, the majority of his marks were consistently "meets expectations." In addition, there was some concern with Lee's tendency to criticize the school and his failure to be a team player. He had one disciplinary action on his record. Lee also "continuously made comments that he was one of the best teachers at AVLA," a statement Childers found

untrue. The record shows that Lee's superiors did not praise Lee's job performance as much as Lee praised his own performance. Thus, Lee's job performance was not comparable to the plaintiff in *Gemini*.

Lee insists pretext is shown because AVLA provided trumped up reasons for his termination. He cites *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 112, footnote 12 (*Reeves*), for the proposition that when an employer's stated reason for termination is "trumped up or is 'unworthy of credence,'" there is sufficient evidence for a finding that the employer was motivated by discriminatory animus. In *Reeves*, there was "no evidence that any of [the plaintiff's] other conduct was sufficient to warrant dismissal." (*Id.* at p. 112, fn. 13.) That is not the case here, where the AVLA manual specifically prohibited "[u]nprofessional" conduct and "[a]ny other conduct detrimental to other employees or [AVLA's] interests or its efficient operations." Lee has presented no evidence that AVLA's reasons for his termination were trumped up or unworthy of credence. He admits to all of the actions leading up to his termination, including creating the "Commendations" document and requesting the meeting with Childers.

Lee points out he had always been vocal about his teaching record and his criticisms of AVLA, and it was not until he complained of racial discrimination that his supposedly inflated self-assessment and criticism of his superiors became an issue. Lee cites *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, in which the plaintiff alleged she was terminated due to disability discrimination. The employer relied on declarations from the plaintiff's supervisors to support its proffered legitimate reasons for termination, several of whom

21

mentioned the plaintiff's tardiness. In reversing summary judgment, the Court of Appeal emphasized that Soria's tardiness had been occurring for several years but did not become an issue until she lodged a complaint about disability discrimination, and she had never been disciplined for being late until then. (*Id.* at p. 596.) However, the *Soria* court noted not only were there inconsistencies and contradictions in the evidence of the plaintiff's tardiness, it was undisputed some of her late arrivals were for medical appointments related to her disability. (*Id.* at pp. 595–596.) Thus, the court concluded "a finder of fact could reasonably infer at least some of the tardiness observed by Univision employees in 2011 was due to Soria's medical appointments and, as a result, Soria was improperly terminated, at least in part, as a direct result of protected activity." (*Id.* at p. 596.) Significantly, in contrast to the present case, Soria presented evidence her employer was aware of her disability (*id.* at pp. 592–593), while Lee failed to present evidence that Childers was aware of Lee's complaints of racial discrimination.

Lee cites several cases he claims support his argument that summary judgment is inappropriate where evidence of favorable performance reviews and temporal proximity is combined with evidence that the employer's stated reasons are unworthy of credence.[5] Again the critical element Lee is missing is knowledge by the individual responsible for the adverse action. This element is present in each case Lee cites. (See *Yanowitz, supra*, 36 Cal.4th at p. 1046 ["when the circumstances surrounding an employee's conduct are sufficient to establish that an employer

---

[5] As set forth above, Lee has presented no evidence Childers's reasons were unworthy of credence.

knew that an employee's refusal to comply with an order was based on the employee's reasonable belief that the order is discriminatory, an employer may not avoid the reach of the FEHA's antiretaliation provision"]; *Diego v. Pilgrim United Church of Christ, supra*, 231 Cal.App.4th at p. 919 [finding cause of action existed for wrongful termination in violation of public policy where employer believed employee engaged in protected activity]; *Gemini, supra*, 122 Cal.App.4th at p. 1020 [inference of causal connection raised where there was evidence of the employer's awareness of protected activities and adverse action that followed within a relatively short time]; *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 478 [same highly placed officer who made offending comments to female employee was responsible for terminating plaintiff, who had opposed the harassment].) Lee has presented no evidence suggesting Childers was aware, at the time she made the decision to terminate Lee's employment, that Lee had made complaints of racial discrimination. As previously explained, his passing comment to her at the meeting was insufficient.

Lee raises two additional factors: deviation from ordinary personnel procedures and inadequate internal investigation.[6]

---

[6] Lee cites *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 239, and *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 45, for the proposition that "'[a]n employer's failure to follow its own policies and procedures is not illegal in and of itself, but may be evidence of pretext.'" Lee cites *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 278–283, and *Reeves, supra*, 121 Cal.App.4th at page 117 in support of his argument that an inadequate investigation is evidence of pretext.

Neither can show pretext where, as here, there is no evidence Childers knew of Lee's complaints of racial discrimination.

Further, the evidence Lee cites is unconvincing. Although Lee argues AVLA deviated from its normal procedures when terminating him, Childers presented evidence her father was dying of COVID-19 during the time in question. That evidence, which is uncontradicted, presents a reasonable explanation for the deviation from ordinary procedures.

Lee's contention that Miller conducted an inadequate investigation of his claim of racism to LLAC in 2021 is groundless. Lee claims Miller finished his investigation and reached his conclusion in a mere seven days. More importantly, Lee argues, even though Miller claimed to have interviewed school principal Palacios, Palacios testified he had no recollection of the interview. Palacios testified he had not heard of any discrimination complaint and could not remember if he had been contacted by someone named Adam Miller. Lee also raises Miller's role as the individual tasked by Childers to terminate him in Childers's absence. Lee argues this raises questions as to whether Miller was truly unbiased in performing his investigation.

Lee fails to cite any evidence that Childers was aware of Lee's complaint to LLAC, or Miller's investigation of it, when she made the decision to terminate Lee. Any flaw in Miller's investigation therefore has no bearing on Childers' decision.

Lee also fails to cite any evidence suggesting Miller's investigation was flawed. The record shows the investigation lasted nearly two months. It opened on August 13, 2021, and concluded on October 4, 2021. Further, even after completion of the investigation, Miller interviewed another witness, referred by

Lee, who denied that Lee had ever experienced racial discrimination in her presence. There is no evidence suggesting Miller's investigation was insufficient.

Lee's contention that Miller's role as the individual tasked with terminating Lee somehow affected Miller's investigation is unreasonable. The investigation took place months before the termination. Any suggestion that Miller's role in Lee's termination serves to undermine the integrity of the investigation is illogical.[7]

Lee's efforts to show pretext fail. In the absence of a fundamental causal link between his complaints of racial discrimination and his termination, Lee cannot raise a reasonable inference that Childers had a retaliatory motive.

### B. *Retaliation in violation of Labor Code section 1102.5*

Labor Code section 1102.5, subdivision (b) prohibits an employer from retaliating against an employee for disclosing information to a government or law enforcement agency or to a person with authority to "investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state

---

[7] We decline to address Lee's brief, insufficient argument that he showed disparate treatment based on race. Lee claims whenever he was denied an employment opportunity with AVLA, the job went to a non-Asian person. Lee fails to provide any evidence of intentional discrimination or any circumstance suggesting a discriminatory motive. (*Guz, supra*, 24 Cal.4th at pp. 354–355.) Further, the statute of limitations has run on Lee's unsuccessful attempts to secure other positions at AVLA, and Lee has not appealed the trial court's determination that the continuing violations doctrine is not applicable in this case.

or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." "This provision reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77.)

The *McDonnell Douglas*[8] burden-shifting standard does not apply to whistleblower claims under California law. (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718.) However, whistleblower plaintiffs still must "show that retaliation was a 'contributing factor' in their termination, demotion, or other adverse action." (*Id.* at p. 713.) Thus, "[e]ven if the employer had a genuine, nonretaliatory reason for its adverse action, the plaintiff still carries the burden assigned by statute if it is shown that the employer also had at least one retaliatory reason that was a contributing factor in the action." (*Id.* at p. 716.)

As explained above, Lee has failed to meet this burden. The evidence is uncontradicted that Lee's complaints about race discrimination were unknown to Childers at the time she made the decision to terminate his employment. Thus, Lee cannot meet his initial burden of showing his complaints of race discrimination were a contributing factor in the termination of his employment. The absence of this causal connection is fatal to Lee's claim under Labor Code section 1102.5.[9]

---

[8] See *McDonnell Douglas, supra*, 411 U.S. at pages 802–806.

[9] Lee argues that because his causes of action for retaliation are viable, his claim for wrongful termination in violation of public policy is also viable. As we have determined his causes of

### III. Race discrimination and failure to prevent discrimination

Lee does not challenge the trial court's determination that his claims for race discrimination based on events occurring between 2015 and 2019 are time-barred. Instead, he argues his claim for race discrimination is not premised exclusively on what happened in 2019 and before. It is also based on his termination, which occurred in January 2022.

In order to show that his termination in January 2022 was based on racial discrimination, Lee was required to make a prima facie showing that (1) he was a member of a protected class; (2) he was qualified for his position and performing competently; (3) he suffered an adverse employment action; and (4) "some other circumstance suggests discriminatory motive." (*Guz, supra*, 24 Cal.4th at p. 355.) It is the final element of the prima facie case that Lee is lacking.

There is absolutely no evidence from which racism or discriminatory animus can be inferred as the motivation for Lee's termination. Lee presents pure speculation, which is insufficient to survive summary judgment. (*Aguilar, supra*, 25 Cal.4th at

---

action for retaliation are not viable, we find his claim for wrongful termination in violation of public policy also must fail. (*Wilkin v. Community Hospital of the Monterey Peninsula* (2021) 71 Cal.App.5th 806, 831 [where there are no triable issues of material fact as to plaintiff's FEHA claims, plaintiff's claim for wrongful termination in violation of public policy fails as a matter of law].)

pp. 864–865 ["Speculation . . . is not evidence. . . . Neither does it even support an inference implying as much."].)[10]

## DISPOSITION

The judgment is affirmed.  AVLA is awarded its costs of appeal.

_____
CHAVEZ, J.

We concur:

_____
ASHMANN-GERST, Acting P. J.

_____
RICHARDSON, J.

---

**10**     Because we have determined the trial court properly granted summary judgment on Lee's claims against AVLA, we decline to discuss Lee's argument that the trial court improperly granted the motion for judgment on the pleadings.  We review the court's ruling, not its reasoning, and may affirm on any ground supported by the record.  (*Frayo v. Martin* (2024) 102 Cal.App.5th 1025, 1033.)